Donna **TIEMEYER**, et al., Plaintiffs,

v.

**COMMUNITY MUTUAL INSURANCE COMPANY**, et al., Defendants.

No. C–1–90–509.

United States District Court, S.D. Ohio, W.D.

April 16, 1992.

**896**

Mitchell Goldberg, Philip Logan, Cincinnati, Ohio, for plaintiffs.

Frank Woodside, Edward Marks, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon cross-motions for summary judgment (documents 36, 37 and 38). Fed.R.Civ.P. 56(c). The Plaintiffs assert a claim under the Employee Retirement Income Security Act of 1974 (ERISA) to recover benefits allegedly due to them as participants in an employee welfare benefit plan, 29 U.S.C. § 1132(a)(1)(B), and for an alleged breach of fiduciary duty, 29 U.S.C. § 1132(a)(2). In accordance with Federal Rule of Civil Procedure 52, this Court herewith submits its Findings of Fact, Opinion and Conclusions of Law.

## FINDINGS OF FACT

■ Donna Tiemeyer (Tiemeyer), an employee of the Children's Hospital Medical Center (CHMC), and her husband Thomas Tiemeyer were provided family coverage through CHMC under the a group policy—the CHMC Blue Cross Blue Shield and Major Medical Plan for Regular Full–Time and Part–Time Employees (Plan). The Plan was purchased from the Community Mutual Insurance Company (Community Mutual or CMIC). CHMC administered the Plan. Community Mutual was responsible for enrollment administration and the day-to-day claims. *Stipulated Statement of Facts*, at 2, ¶s 6, 7 and 9, document 39.

■ On October 13, 1987, a co-worker informed Tiemeyer of a pregnant young woman who wanted to give her expected triplets up for adoption. Interested in the possibility of adopting the triplets, Tiemeyer consulted the Summary Plan Description booklet (SPD or "book") issued to the Plan's participants. *Deposition of Donna Tiemeyer*, at 32–33; *Stipulated Statement of Facts*, at 3 ¶s 11–12, document 39. Under the heading *ELIGIBILITY INFORMATION—Who is eligible* the SPD states that "[e]ligible children are your [a Plan partici-

pant's] unmarried children who have not reached the age of 19." *Stipulated Statement of Facts*, Exhibit 3 at 4, document 39. (clarification added).

■ Also on October 13, 1987, Tiemeyer contacted CHMC benefits specialist Mary Gavin regarding coverage for the triplets. *Deposition of Donna Tiemeyer*, at 12, 18, 32–33; *Stipulated Statement of Facts*, at 3, ¶s 11–12, document 39. Gavin informed Tiemeyer of Community Mutual's policy regarding coverage of an adopted child. Gavin told Tiemeyer that she would check to see if this policy had changed and get back to her. Before the triplets were born Gavin called Tiemeyer and read to her the applicable policy from the Administrative manual. *Deposition of Donna Tiemeyer*, at 70–72; *Deposition of Mary K. Gavin*, at 91–97. That policy provides:

> *What to do when an employee adds a dependent*
>
> In the case of child adoption, if the application is received within 30 days of the adoption, the adoption date becomes effective date of the coverage. The adoption date is the date the child established residence with the subscriber or the date the petition for adoption is filed, which ever occurs last.

*Stipulated Statement of Facts*, Exhibit 5 at 14, document 39.

■ On December 29, 1987, the unidentified young woman gave birth to triplets at the University of Cincinnati Hospital. The infants incurred serious medical problems associated with their premature birth and were placed in the Hospital's critical care unit. *Stipulated Statement of Facts*, at 3 ¶ 13, document 39; *Plaintiffs' Motion for Summary Judgment*, Exhibit I, document 36.

■ During this time period David A. Garretson, an attorney handling the private adoption for the Tiemeyers, discussed the situation with Community Mutual attorneys Amy Zeldin and Ray Umstead. In a January 14, 1988, letter Zeldin informed Garretson that "we are in the process of reviewing Donna Tiemeyer's coverage so that we may properly advise you regarding

coverage for the triplets Ms. Tiemeyer is adopting." *Stipulated Statement of Facts*, Exhibit 7, document 39.

■ On January 15, 1988, the Tiemeyer's filed a petition in the Hamilton County Court of Common Pleas, Probate Division, for the adoption of Joshua William Tiemeyer, Zachary Gene Tiemeyer, and Geoffrey Robert Tiemeyer. The Probate Division issued an Interlocutory Order of Adoption on April 11, 1988, and a granted a Final Decree of Adoption on November 3, 1988. *Plaintiffs' Motion for Summary Judgment*, Exhibit B, document 36; *Stipulated Statement of Facts*, Exhibit 6, document 39.

■ Hours after filing the adoption petition Tiemeyer filed an application with CHMC to add the triplets as her dependents under the Plan. The effective date to add the triplets is recorded as "1/15/88 *." The asterisk was notated by Tiemeyer at Gavin's request to indicate "or as soon as poss [possible] legal date." *Stipulated Statement of Facts*, Exhibit 4, document 39. (clarification added).

■ Zeldin "formally and explicitly advised" the Tiemeyers in a January 19, 1988, letter to Garretson that the triplets were not covered under the Plan because they failed to satisfy the adoption date residency requirement. This letter was also sent to Gavin. *CHMC's Motion for Summary Judgment*, at 4, document 38; *Community Mutual's Motion for Summary Judgment*, at 9, document 37; *Stipulated Statement of Facts*, Exhibit 7, document 39.

■ The Tiemeyer's appealed the coverage denial to the Community Mutual Corporate Appeals Committee. The Committee denied the appeal. Corresponding to the hospital discharge date of each Tiemeyer infant the Committee stated that "Jeffery [sic] established his residency in the Tiemeyer household on March 2, 1988; Joshua on April 23, 1988; and Zachary on May 13, 1988. Therefore, these are the dates on which the criteria for coverage of adoptive children were satisfied." *Stipulated Statement of Facts*, Exhibits 8 and 9, document 39.

■ The Tiemeyers instituted this action on June 6, 1990. *Complaint*, at 1, document 1. The Plaintiffs claim that the health care expenses incurred by the Tiemeyer infants total $413,470.00. *First Amended Complaint*, at ¶ 14 and Exhibit C, document 13; *Stipulated Statement of Facts*, Exhibit J, document 39.

## OPINION

### Summary Judgment

The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Rule 56(c) permits the Court to grant summary judgment as a matter of law only after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53.

■ A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) *quoting, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson, supra* 477 U.S. at 255, 106 S.Ct. at 2513–14, *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). The function of the Court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson, supra* 477 U.S. at 249, 106 S.Ct. at 2510–11. There is no genuine issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. *Anderson* at 249, 106 S.Ct. at 2510–11 *citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592–1593. If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 89 (1967) or is not significantly probative, *Cities Service, supra* 391 U.S. at 290, 88 S.Ct. at 1593, summary judgment may be granted. *Anderson, supra* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### The Standard of Review and Application of Trust Law Principles

■ Under ERISA, 29 U.S.C. § 1132(a)(1)(B), a plan administrator's benefit determination is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co., v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Where the administrator or fiduciary has a clear grant of discretionary authority an arbitrary and capricious standard of review applies. *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57; *Anderson v. Great West Life Assur. Co.,* 942 F.2d 392, 394 (6th Cir.1991); *Brown v. AMPCO–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir.1989).

■ When interpreting the language of an ERISA plan the courts are guided by the principles of trust law. *Firestone,* 489 U.S. at 110, 109 S.Ct. at 954; *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1248 (6th Cir.1991); *Great West,* 942 F.2d 392, 395 (6th Cir.1991). "As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation." *Firestone,* 489 U.S. at 112, 109 S.Ct. at 955; *Great West,* 942 F.2d at 395. When a plan gives a trustee the "power to construe disputed or doubtful terms" the trustee's interpretation, if reasonable, will not be disturbed. *Firestone,* 489 U.S. at 111, 109 S.Ct. at 954; *Wells,* 950 F.2d at 1248.

■ The Defendants contend that Community Mutual possesses a grant of discretionary authority because a provision on the "inside cover of the SPD ... gives the plan the right and obligation to approve applicants for participation." *Motion of Defendant Community Mutual Insurance Company for Summary Judgment,* at 14, document 37; *Motion by Defendants CHMC and the Plan for Summary Judgment,* at 7, document 38. The inside cover provision states:

> Subject to the payment of fees, all persons who have:
> \* satisfied the eligibility conditions,
> \* applied for coverage, and
> \* have been approved by the Plan,
> are covered by the group contract. Such persons are called **covered persons** (or you, your).

*Stipulated Statement of Facts,* Exhibit 3, document 39.

The Defendants also contend that the following SPD booklet provision reserves discretion "to allow the Administrator to make determinations concerning coverage:"

**HOSPITALIZATION BENEFITS**

\*   \*   \*   \*   \*   \*

**What is not covered**
We are unable to cover some types of care. The decision about noncovered care will be made by us based on medical information supplied by physicians, facilities, or a medical foundation or utilization review committee.

*Memorandum of CHMC and the Plan in Opposition to Plaintiffs Motion for Summary Judgment,* at 15, document 43. *Stipulated Statement of Facts,* Exhibit 3 at 8, document 39.

The inside cover provision assigns the task of approval, and it lists four requirements which must be fulfilled in order for a person to be covered by the group contract. The latter SPD booklet provision grants discretion only as to what types of hospital care or treatment are covered. Neither provision grants Community Mutual or CHMC discretionary authority to determine benefit eligibility or to construe the terms of the Plan. *Great West,* 942 F.2d at 395 ("[D]iscretion is not an all-or-nothing proposition. A plan can give an administrator

discretion with respect to some decisions, but not others."). The absence of a clear grant of discretion dictates that a *de novo* standard of review applies. *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989); *Perry v. Simplicity Engineering*, 900 F.2d 963, 965 (6th Cir.1991).

The Administrator's Decision

In the ERISA context, "[w]hen a court reviews a decision *de novo* it simply decides whether or not it agrees with the decision under review" as based on the record before the administrator. *Simplicity Engineering*, 900 F.2d at 966–67. Community Mutual's decision to deny benefits is based upon the Tiemeyer infants' inability to satisfy an adoption date residency requirement. This requirement consists of a dependent status and a physical presence in the Tiemeyer home:

> Inasmuch as all three children have been inpatients at Children's since birth and are not primarily dependent upon her for support, it is impossible for them to have established residence with Ms. Tiemeyer prior to the date Ms. Tiemeyer's Petition for Adoption was filed, and such impossibility will continue for as long as the children remain hospitalized.

*Stipulated Statement of Facts*, Exhibit 7, Zeldin's January 19, 1988 letter at 1, document 39. The Community Mutual Appeals Committee upheld this denial on the same ground. *Stipulated Statement of Facts*, Exhibit 9, document 39. Upon a review of the record before the administrator this Court disagrees with the decision to deny benefit coverage.

On January 15, 1988, the natural mother consented to give the triplets up for adoption and the Tiemeyer's filed the Petition for Adoption. *Stipulated Statement of Facts*, Exhibit 6, document 39. On this date, in accordance with the Ohio Revised Code, the Tiemeyers assumed the responsibility for paying the physician and hospital expenses incurred in connection with the birth of the triplets, physician expenses incurred in connection with prenatal care or confinement, and agency expenses incurred in connection with the adoption. O.R.C. § 5103.16, § 3107.10; *Stipulated Statement of Facts*, Exhibit 6, document 39. As of January 15, 1988, the triplets were primarily, if not totally, dependent upon the Tiemeyer's for support.

Under the Plan a participant's unmarried dependent child between 19 and 25 years old, unmarried dependent child who is a full-time student, or dependent disabled child may gain coverage by satisfying a residency requirement. *Stipulated Statement of Facts*, Exhibit 3 at 15, 17, document 39. In each of these situations residency is not interpreted as requiring a physical presence in the Plan participant's home.[1] The Defendants contend that this interpretation is justified because there is "a valid distinction to be made in that at one time [these classes of dependent children] actually lived at the subscribers' home prior to leaving." *Memorandum of Defendants CHMC and the Plan in Opposition to Plaintiffs' Motion for Summary Judgment* at 12–13, document 43. (clarification added). CHMC benefits specialist Gavin, however, contradicts this contention.[2] Additionally, upon approaching the limiting age of the Plan a dependent child in one of these classes must apply for continuous coverage, it is not automatically granted. Continuing coverage may be granted in the absence of the dependent child's physical presence in the participant's home. *Stipulated Statement of Facts*, Exhibit 5 at 15, 17, document 39; *Deposition of Mary K. Gavin*, at 67–74.

The Defendants' contention that the triplets established residency on their respective hospital discharge dates also conflicts

---

1. Deposition of Mary K. Gavin at 67–69, 73–74 (disabled child, unmarried dependent child between the ages of 19 and 25 or full-time student may reside outside the Plan participant's home and be covered).

2. Q. Okay. So a natural born child who is retarded and needs permanent institutionalization, never ever gets to reside with their parents in their parents' house, would still be covered?

    \*    \*    \*    \*    \*    \*

    A. If the institutionalization is confirmed to be medically necessary.
Deposition of Mary K. Gavin at 74.

with Ohio law. The Ohio Revised Code provides, in pertinent part:

**3107.13 Residence in adoptive home**[3]

A final decree of adoption shall not be issued and an interlocutory order of adoption does not become final, until the person to be adopted has lived in the adoptive home for at least six months after placement by an agency, or for at least six months after the department of human services or the court has been informed of the placement of the person with the petitioner....

O.R.C. § 3107.13.

On January 15, 1988, the triplets were placed in the Tiemeyer's home and the Probate Division was informed of the placement. *Stipulated Statement of Facts*, Exhibit 6, document 39. Geoffrey, Joshua, and Zachary were discharged from University Hospital on March 2, 1988, April 23, 1988, and May 13, 1988, respectively. *Stipulated Statement of Facts*, Exhibits 8, document 39. In order to issue the November 3, 1988, Final Decree of Adoption as to all of the triplets the Probate Division considered January 15, 1988, as the date residency was established. If the Probate Division had construed the discharge dates as establishing residency then Zachary could not have "lived in the adoptive home for at least six months" in accordance with § 3107.13. The Tiemeyer triplets established residency on January 15, 1988.

The administrator's decision to deny benefit coverage is an inconsistent and unreasonable interpretation under the Plan.[4] Upon review of the record before the administrator this Court disagrees with the decision.

### Attorney Fees, Costs and Prejudgment Interest

■ In an ERISA action by a participant, beneficiary or fiduciary it is within the discretion of the trial court to award reasonable attorney fees and costs to either party. 29 U.S.C. § 1132(g)(1). In considering such an award the court should consider

1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions.

*Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301 (6th Cir.1991); *Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1987).

The Defendants, no doubt, could satisfy an award of attorney fees. Upon consideration of the record, however, this Court finds that the Defendants did not proceed in bad faith and that both parties advanced meritorious positions. Additionally, subsequent changes in Ohio law mute the deterrent effect of such an award and constrain the Plaintiffs from conferring a common benefit. O.R.C. § 3923.40. An award of attorney fees and costs is not warranted.

"The general rule is that in the absence of a statutory provision the award of prejudgment interest is in the discretion of the court." *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982). Upon consideration of the record an award of prejudgment interest is not warranted.

### CONCLUSIONS OF LAW

■ This Court has jurisdiction pursuant to the Employee Retirement Income Securi-

---

**3.** Section 3107.13 was retitled as "Probationary period" after the Tiemeyer final adoption decree was issued.

**4.** Community Mutual's "pseudo-adoption" argument poses an unreasonably broad basis for the physical residency requirement. *Community Mutual Insurance Company's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment*, at 7, document 40. In contrast to the actual adoption in this case, Zeldin's January 19, 1988 letter evidences that Community Mutual would be intolerant of such "pseudo-adoptions" to gain coverage. *Stipulated Statement of Facts*, Exhibit 7 at 2, document 39. ("Community Mutual will not recognize a discharge effected primarily for the purpose of establishing insurance coverage.").

ty Act of 1974. 29 U.S.C. § 1001 *et seq.* Venue lies in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b).

■ The Plan administrator's decision is reviewed under a *de novo* standard based upon the record as it appeared before the administrator. *Firestone Tire and Rubber Co., v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Anderson v. Great West Life Assur. Co.,* 942 F.2d 392 (6th Cir.1991); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546 (6th Cir.1989); *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir.1991).

■ The Tiemeyer triplets established residency and their Plan coverage began on January 15, 1988. *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir.1991); Ohio Revised Code § 5103.16, § 3107.13, § 3107.10.

■ The pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits demonstrate the absence of any genuine issue of material fact. Summary judgement is hereby GRANTED to the Plaintiffs as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Firestone Tire and Rubber Co., v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir.1991); Ohio Revised Code § 5103.16, § 3107.13, § 3107.10.

■ The Plaintiffs' request for attorney fees, costs and prejudgment interest is hereby DENIED. 29 U.S.C. § 1132(g)(1). *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1301 (6th Cir.1991); *Secretary of Dept. of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1987); *Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 990 (6th Cir.1982).

IT IS SO ORDERED.