**Telford P. WHISMAN, Plaintiff,**

v.

**Loran W. ROBBINS, Trustee, et al., Defendants.**

**No. C-3-87-458.**

United States District Court, S.D. Ohio, W.D.

Dec. 29, 1992.

See also 712 F.Supp. 632.

Konrad Kuczak, Dayton, OH, for Telford P. Whisman.

James Alan Dyer, Sebaly, Shillito & Dyer, Dayton, OH, for Loran Robbins, Marion M. Winstead, Robert C. Sansone, R. Jerry Cook, Howard McDougall, Robert J. Baker, R.V. Pulliam, Sr., Arthur H. Bunte, Jr.

Louis Frank Solimine, Thompson, Hine & Flory, Cincinnati, OH, Joan Simmons, Central States Law Dept., Rosemont, IL, for Central States Southeast and Southwest Areas Pension Fund.

DECISION AND ENTRY FINDING IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANTS; JUDGMENT ORDERED ENTERED IN FAVOR OF THE PLAINTIFF AND AGAINST THE DEFENDANTS, ORDERING DEFENDANTS TO REINSTATE PLAINTIFF'S BENEFITS, EFFECTIVE AND RETROACTIVE TO SEPTEMBER 1, 1987; PLAINTIFF'S MOTION FOR SANCTIONS (DOC. #72) AND FOR DEFAULT (DOC. #79) OVERRULED IN THEIR ENTIRETY; PLAINTIFF'S APPLICATION FOR LEAVE TO SUPPLEMENT RECORD (DOC. #93) SUSTAINED; RECORD DEEMED SUPPLEMENTED; DEFENDANTS' OBJECTIONS (DOC. #83) TO PLAINTIFF'S RECORD DEEMED MOOT; PLAINTIFF'S MOTION TO STRIKE AFFIDAVIT OF ALBERT NELSON (DOC. #92) DEEMED MOOT; FURTHER PROCEDURES ORDERED ON ISSUE OF ATTORNEY FEES; TERMINATION ENTRY

RICE, District Judge.

This is an action brought by Plaintiff Telford P. Whisman ("Whisman") against the Central States, Southeast and Southwest Areas Pension Fund ("Central States") and the Board of Trustees of Central States ("Trustees"), individually and collectively, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), to recover suspended pension benefits denied to him by the Trustees (Doc. #1). This case is now before the Court for a determination upon the merits based on the record. Having considered the pleadings, the motions, the filings and attachments, and the administrative record, the Court, for the reasons more fully developed herein, enters Judgment in favor of Plaintiff and against Defendant Central States.

*Facts*

The pertinent facts are undisputed. Central States provides pension benefits to union employees (Doc. #1 at ¶2). Defendants Loran W. Robbins, Marion W. Winstead, Robert C. Sansone, Jerry R. Cook, Howard McDougall, Robert J. Baker, R.V. Pulliam, Sr. and Arthur H. Bunte, Jr. are Trustees of the Central States pension fund (*Id.* at ¶1, 4). Whisman was employed in the Teamster industry and participated in the pension plan by virtue of his employment as a truck driver for Carolina Freight Carrier and Interstate System (Doc. #81 at 249–250). On December 4, 1984, Whisman qualified for a twenty-year deferred pension benefit and was notified that he would begin receiving a pension at age 57 (*Id.* at 246–47). Thereafter, Whisman elected to retire before age 57 and began receiving a $1,000 monthly retirement benefit under a special "30-and-Out" voluntary self-payment contribution program (Doc. #1 at ¶6; Doc. #81 at 224, 230–245).

On November 23, 1986, Whisman notified Central States by letter that he had accepted employment with the United States Postal Service ("USPS") as a "Flexible" employee (Doc. #81 at 201, 203). On March 20, 1987, the Central States Reemployment Review Committee concluded that Whisman's employment as a mail carrier violated the plan's reemployment rules, and, therefore, that he was not entitled to his pension benefits if he chose to continue working for the USPS (*Id.* at 199). Whisman appealed this determination to the Benefits Claims Appeals Committee but the decision denying retirement benefits was affirmed (Doc. #1 at ¶9; Doc. #81 at 192–95). Whisman's claim was also considered and denied by the Trustees (Doc. #81 at 178–79). This denial was based on the Trustees' finding that Whisman's USPS employment was the type of work performed "for an employer engaged in the same business activities in which a Contributing Employer is engaged" (*Id.* at 183, 178–184).

On September 11, 1987, Whisman filed this action to recover suspended pension benefits denied to him by Central States. Whisman claims that the denial of benefits was an unreasonable, arbitrary and bad faith decision by the Trustees (Doc. #1 at ¶12). Whisman also alleges that the

Trustees breached its fiduciary duty under 29 U.S.C. § 1109 in causing the suspension of his retirement benefits (*Id.* at ¶ 11). Whisman seeks a declaration that the suspension of his retirement benefits by the Trustees constituted a breach of their fiduciary duties; that the Trustees be required to respond personally to him for damages; that benefits be reinstated, effective September 1, 1987, with interest; that he be awarded reasonable attorney fees and expenses; and that the Trustees be prohibited from taxing the costs of this litigation to the remaining plan participants (*Id.* at 4–5).

Subsequent procedural history reveals that on December 13, 1988, the Court ordered that this case be submitted upon the record as it existed at the time the Trustees made their decision to suspend Whisman's benefits and directed that a complete record be filed not later than the close of business on Monday, April 17, 1989 (Doc. # 58 at 2). Thereafter, the parties submitted memoranda in support of their respective positions on the merits of the litigation (Docs. # 73, 80, 90, 94). On May 15, 1989, Whisman filed a Motion For Sanctions (Doc. # 72), on the basis that Central States had ignored its Court mandated obligation to file an administrative record in a timely fashion and that it had resisted discovery. On June 5, 1989, Central States filed a Memorandum In Opposition to that Motion

For Sanctions (Doc. # 76). On June 7, 1989, Whisman filed a Reply (Doc. # 80). On that same day, Whisman also filed an Application For Default Judgment (Doc. # 79), on the basis that Central States had failed to file the aforesaid administrative record. On June 30, 1989, Central States filed a Memorandum In Opposition To Application For Default Judgment (Doc. # 89). On that same day, Whisman filed his Reply (Doc. # 91). On June 19, 1989, Central States filed Objections to Whisman's record (Doc. # 83).

On July 20, 1989 Whisman filed a Motion To Strike Affidavit Of Albert E. Nelson (Doc. # 92). On August 14, 1989, Central States filed a Memorandum In Opposition To Motion To Strike Affidavit (Doc. # 95). On July 21, 1989, Whisman filed an Application For Leave To Supplement Plaintiff's Record (Doc. # 93). On August 15, 1989, Central States filed a Memorandum In Opposition To Application For Leave To Supplement Plaintiff's Record (Doc. # 96). On July 10, 1990, Whisman filed an Application For Leave To File A Supplement To Prior Submission (Doc. # 98). This Application was granted (Doc. # 99).

*The Record on Review*

■ As a preliminary matter, this Court must decide what constitutes the complete record in this case, since the parties dispute its content.[1] The Sixth Circuit has held, in

---

1. In his Motion For Sanctions, Whisman contends that Central States neglected to timely file a Court ordered administrative record in this case, and therefore, should be prohibited from filing a record documenting the administrative proceedings below (Doc. # 72). In the Entry referred to by Whisman, this Court stated that "the complete record will be filed not later than the close of business on Monday, April 17, 1989" (Doc. # 58 at 2). In its Memorandum In Opposition To Motion For Sanctions, Central States claims that it presumed Whisman would file the record since the Court's language did not direct either party to comply with its order and because an appellant customarily files the record (Doc. # 76 at 4–5). To remedy this predicament, Central States promised to file a record by June 12, 1989 (Doc. # 76 at 5). That record was indeed filed on June 12, 1989 (Doc. # 81).

Apparently, there was some confusion over which party had the obligation to file the record. Under these circumstances, excluding Central States version of the record would serve no purpose. Whisman has not identified any prej-

udice that would result from the late submission of the record. In the interests of justice, this case should be decided on the merits. In this Court's opinion, Whisman is seeking an extreme sanction in light of the fact that he has raised no allegation of prejudice, and that Central States was not certain it was under an order to file a record, given the non-specific nature of the Court's directions. Whisman's contention that "the ... failure of the Defendants to comply with the orders of the court concerning the submission of the record appears preliminary to the commencement of an additional battle over the content of the record, which experience shows ... may take an additional two years" (Doc. # 72) does not demonstrate prejudice since such charges are merely speculative. Whisman also urges this Court to award sanctions on the basis that Central States has wrongfully resisted discovery. A review of the record indicates that although the parties were involved in a discovery dispute, nothing in the discovery proceedings reveals any wrong doing by Central States. Based on the foregoing, the Court overrules

light of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that a district court is required to focus on the evidence before the Trustees at the time of their final decision and not hold a factual *de novo* hearing on evidence not presented to the Trustees in connection with that claim. *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990) (the *de novo* review required by *Bruch* is a *de novo* review of the record before the administrator or fiduciary). Accordingly, this Court must not resolve the question of the suspension of Whisman's retirement benefits on the basis of evidence never presented to the pension fund's Trustees when they approved such suspension.

■ Both parties have filed independent versions of the record in this case (Docs. # 74, 81). Central States has objected to the majority of documents contained in Whisman's record on the basis of their irrelevancy (Doc. # 83). Since there were no objections filed with respect to Exhibits 1–45 of Whisman's record, this Court assumes that Central States has conceded to the inclusion of those documents (*Id.*). Whisman's record was submitted without an affidavit to establish the authenticity of its contents. Whisman's counsel merely stated, in a prelude to the record, that the documents contained within his submission were obtained from Central States in the course of discovery in the instant action and in the course of discovery in a separate action, *Long v. The Central States Pension Fund*, Case No. C–3–86–210 (Doc. # 74 at 2). Consequently, there is no way to determine whether Whisman has submitted accurate copies of documents that meet the *Bruch* standard. Central States submitted its copy of the record accompanied by the verification of Albert E. Nelson, Director of Central States Benefit Services (Doc. # 81 at 1–2). Nelson's affidavit es-

tablishes that he is custodian of Central States' records relating to the suspension of Whisman's pension benefits (*Id.* at 1, ¶¶ 1–2). Nelson also avers that Central States' version of the record contains true, correct and complete copies of the documents that were available to the Trustees at the time of their review (*Id.* at ¶¶ 2–3).

■ The only relevant material is what was actually considered by the Trustees. The Court finds that the Nelson affidavit demonstrates that he is in a position to verify what evidence was actually considered by the Trustees when they reached their decision to suspend Whisman's retirement benefits. The Whisman record cannot be adopted as the appropriate record because this Court can only guess as to what documents were actually before the Trustees. Therefore, in the spirit of *Bruch*, this Court adopts Central States' version of the record (Doc. # 81) and the uncontested portions of Whisman's record (Doc. # 74) as the appropriate record in this case. As a result, this Court does not reach the merits of the objections filed against Whisman's record (Doc. # 83).

■ At this juncture, the Court believes it appropriate to rule on Whisman's Application For Leave To Supplement The Record (Doc. # 93). In that Application, Whisman moves the Court to supplement his version of the record with the Revised And Amended Trust Agreement For Central States, Southeast And Southwest Areas Pension Fund ("Trust Agreement"). The Court sustains Whisman's Application, thereby permitting the submission of the Trust Agreement. The Central States retirement plan is replete with references to the Trust Agreement. Since these two documents appear intertwined, the Court concludes that the Trust Agreement is an integral part of the retirement plan. On that

Whisman's Motion For Sanctions in its entirety. Central States' request for leave to apply for sanctions is also denied (Doc. # 76 at 6).

Whisman has also moved this Court for an order granting a default judgment against Central States (Doc. # 79). It appears to the Court that Whisman bases its motion for default on the same substantive arguments advanced in

support of sanctions, to wit: that Central States had an obligation to provide an administrative record and it wrongfully failed to file that record in a timely fashion. Whisman's Application For Default Judgment (*Id.*) is overruled and Central States' motion for leave to apply for reimbursement of its costs and expenses in opposing said Application is likewise denied.

basis, the Court is convinced that the Trust Agreement had to be considered by the Trustees in conjunction with the retirement plan when they upheld the suspension of Whisman's benefits. Thus, in order for this Court to properly consider the parties' claims in this action, and in the interests of justice, it is necessary to construe the terms of the Trust Agreement with the pension plan provisions at issue in this case. Accordingly, this Court will also permit the Trust Agreement to be included as part of the record in this case.

## Standard of Review

■ A denial of retirement benefits challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956.[2] If the plan gives the administrator or fiduciary such discretionary authority, then the exercise of that authority is reviewed under a deferential standard. *Id.* *See also Perry*, 900 F.2d at 963. Application of the arbitrary and capricious standard of review, however, requires a clear grant of discretion to the plan administrator.[3] *Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir.1991). Further, "an administrator might be given discretion with respect to some decisions but not others.... A fiduciary or administrator does not have discretion with respect to all aspects of a plan simply because the administrator has discretion to interpret

some provisions." *Id.* The Sixth Circuit has ruled that "[a]pplying the abuse of discretion standard ... requires that the Trustees' decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991). The Sixth Circuit has recognized that *Bruch* "made it abundantly clear that discretion is *not* the norm, and that, absent a grant of discretion, an administrator's decision will be reviewed *de novo.*" *Anderson*, 942 F.2d at 394.

Although the Supreme Court did not discuss the meaning of *de novo* review in *Bruch*, the *Perry* decision interpreted the *de novo* standard of review as requiring the district court to review the administrator's decision without deference to that decision or any presumption of correctness.[4] 900 F.2d at 966 (denial of benefits reviewed under the *Bruch de novo* standard). In its decision, the Sixth Circuit explained that in an ERISA context, "[w]hen a court reviews a decision *de novo*, it simply decides whether or not it agrees with the decision under review...." *Id.* The *Perry* court reasoned that requiring a district court to consider new evidence would force the court to function as a substitute plan administrator, and therefore, frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme. *Id.*

## Reviewing The Denial Of Benefits

■ This Court is faced with the threshold question of determining what standard of review to apply to the Trustees' decision

2. Prior to *Bruch*, the Sixth Circuit applied the arbitrary and capricious standard in reviewing claims like Whisman's. *See, e.g., Crews v. Central States*, 788 F.2d 332, 337 (6th Cir.1986).

3. In *Tiemeyer v. Community Mut. Ins. Co.*, 789 F.Supp. 894 (S.D.Ohio 1992), the district court explained:

"[w]hen interpreting the language of an ERISA plan the courts are guided by the principles of trust law (citations omitted). 'As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation' (citations omitted). When a plan gives a trustee the 'power to construe disputed or doubtful terms' the trustee's interpretation, if reason-

able, will not be disturbed (citations omitted)."
*Id.* at 898.

4. In conducting a *de novo* review, the court is bound by the provisions of the documents establishing an employee benefit plan "without deferring to either party's interpretation." *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir.1989) (quoting *Bruch*, 489 U.S. at 112, 109 S.Ct. at 955). The *Bruch* court noted that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956.

to suspend Whisman's retirement benefits. As previously stated, the *Bruch* decision established two standards of review for benefits determinations by fiduciaries or plan administrators under ERISA. *Baker*, 929 F.2d at 1144. The actual plan language is the starting point for determining Whisman's rights under the plan and triggers what standard of review should govern in this case.[5] The pertinent provisions of the Central States pension plan provide that the trustees have the "authority to control and manage jointly the operation and administration of the Pension Fund and ... Pension Plan in accordance with the terms of the Trust Agreement and of this Pension Plan and amendments thereof, including the authority to establish and effectuate funding policies and methods...." (Doc. # 81 at 128). The Central States plan also permits the trustees to amend the plan at any time and to any lawful extent and purpose (*Id.* at 129). The Court finds that the only control expressly retained by the Trustees under the plan language is confined to joint control over the management and operations of the pension plan. Like the plans in *Anderson v. Great West Life Assurance Co.*, 777 F.Supp. 1374, 1375–76 (E.D.Mich.1991)[6], *Brown*, 876 F.2d at 550, *Perry*, 900 F.2d at 964 and *Bruch*, and found to be subject to the *de novo* standard of review, this Court recognizes that the referenced Central States plan language standing alone does not give the Trustees a clear grant of discretionary authority to determine a participant's eligibility for benefits or to construe uncertain terms of the retirement plan.

However, the language of the Central States' retirement plan is replete with references to the Trust Agreement, thereby incorporating by cross-reference those terms into the provisions of the plan. Specifically, Article IV, Section 17 of the Trust Agreement provides that "[t]he Trustees, by majority action, shall have the power to construe ... the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers" (Doc. # 93 Ex. at 160). The Central States plan, by incorporating the Trust Agreement, explicitly gives the Trustees discretionary authority to construe the terms of the plan. The retirement plan, read in conjunction with the Trust Agreement, is enough to convince this Court that the Trustees possess the necessary discretionary authority to subject their decision in this case to the abuse of discretion standard under *Bruch*. This Court must therefore review the Trustees' decision to suspend Whisman's retirement benefits under the arbitrary and capricious standard, based on the record before the Trustees. Guided by the foregoing principles, the Court will now address Whisman's substantive arguments which challenge the validity of the Trustees' suspension of his pension benefits.

█ In challenging the suspension of his retirement benefits due to his post-retirement reemployment, Whisman makes several claims. First, he contends that the suspension of his benefits constitutes an unlawful forfeiture in breach of the Trustees' fiduciary duty (Doc. # 73 at 11). Whisman's forfeiture argument is without merit.[7] Principles of statutory construction re-

---

5. In applying the *Bruch* holding, a court must "first determine whether the benefit plan as described in the various booklets and manuals detailed above explicitly 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of a plan.'" *Bowman v. Firestone Tire & Rubber Co.*, 724 F.Supp. 493 (N.D.Ohio 1989) (review under the arbitrary and capricious standard).

6. On remand for *de novo* review because of the absence of a clear grant of discretion to the plan administrator. *Anderson*, 942 F.2d at 395.

7. Whisman's reliance on the *Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032 (2d Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986), is misplaced. *Chambless* did not stand for the proposition that the suspension of pension benefits constitutes an unlawful forfeiture. Rather, the *Chambless* court held that "Chambless had no vested right to a $920 a month pension and that Amendment 47 did not violate the nonforfeitability requirements of ERISA." *Id.* at 1037. The Court concluded that since Chambless had not reached retirement age, suspension of his benefits did not violate ERISA or the plan itself. *Id.* at 1041. In so holding, the *Chambless* court reaffirmed its prior ruling in *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir.1977), *on remand*, 452

quire this Court to look to the plain language of the statute to determine the meaning of legislation. *McBarron v. S & T Indus., Inc.,* 771 F.2d 94 (6th Cir.1985). The plain language of ERISA clearly allows the benefits in question to be suspended for reemployment without such action constituting an unlawful forfeiture.[8] Further, the plain language contained in the pertinent Department of Labor ("DOL") regulations permits the suspension of retirement benefit payments. 29 C.F.R. § 2530.203–3(a).[9] The regulations expressly state that "[a] plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age ... for any reemployment...." *Id.* The regulations further state that the suspension of benefit payments "shall not be treated as forfeitable." *Id.* The Central States plan in the present case does provide for the suspension of pension benefits prior to the attainment of normal retirement age and in that sense is consistent with the above referenced DOL provisions and ERISA. The Central States plan provides, in pertinent part:

> Section 4.09 REEMPLOYMENT IN THE TEAMSTER INDUSTRY.
>
> \* \* \* \* \* \*
>
> (a)(2) Each pensioner must notify the Pension Fund if he returns to work in the Teamster Industry before his Normal Retirement Date.... retirement pension payments shall be suspended for all periods of reemployment in the Teamster Industry. Payments shall not begin again until the Participant stops working and applies for the resumption of his retirement pension (Doc. # 81 at 110).
>
> \* \* \* \* \* \*

ERISA does not give Whisman any nonforfeitable right to early retirement benefits. The express language of the statute illustrates that the Act requires only that pension benefits be nonforfeitable upon attainment of normal retirement age. 29 U.S.C. § 1053(a). The statute, therefore, gives Whisman no vested right to receive benefits and no right to payout until he reaches that normal retirement age. *See Chambless,* 772 F.2d at 1041. Since ERISA imposes no obligation on a plan to repay suspended pension benefits for prohibited reemployment prior to normal retirement age, Whisman is not entitled to a return of his suspended benefits. Accordingly, this Court holds that the suspension of Whisman's retirement benefits does not constitute an unlawful forfeiture, violative of ERISA's antiforfeiture provisions. In so holding, the Court also concludes that the Trustees did not breach any fiduciary duties in suspending Whisman's benefits.

■■■ Whisman next maintains that the Trustees acted arbitrarily and capriciously, in violation of their fiduciary duties, by the enactment and application of policies under which his retirement benefits were suspended (Doc. # 73 at 13). The Court does not agree. The crux of Whisman's argument seems to impose a fiduciary duty upon the Trustees to protect the financial integrity of the Central States plan. According to Whisman, unless the Trustees demonstrate that the suspension of a retiree's benefits will somehow financially benefit the remaining participants in the fund, their enactment and enforcement of the benefit suspension rules must be construed as arbitrary and capricious (*Id.* at 14).[10] This same argument was made

---

F.Supp. 117 (S.D.N.Y.1978), *aff'd,* 586 F.2d 968 (2d Cir.1978), only to the extent that it held "postponement of retirement benefits until age 65 need not constitute an unlawful forfeiture, violative of ERISA." *Id.*

**8.** 29 U.S.C. § 1053(a) provides, in pertinent part that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...."

**9.** The Secretary has promulgated the "suspension of pension benefit upon reemployment regulations" pursuant to the authority granted to the Secretary by Congress in the organic statute. 29 U.S.C. § 1053 ("The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term 'employed'."). *See also* 29 U.S.C. § 1135.

**10.** Whisman charges that, in this case, "the entire objective ... with respect to the suspension of benefits would appear to be to strengthen the

and rejected by the Eleventh Circuit Court of Appeals in *Deak v. Masters, Mates & Pilots Pension Plan,* 821 F.2d 572 (11th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), a case cited by Whisman in support of his contention.[11] The Court is not persuaded by Whisman's attempt to bind the Trustees by a duty not imposed under ERISA. Further, this Court concludes that the Trustees did not breach any duties under ERISA by not producing documentation indicating the financial impact of their decision affecting Whisman. ERISA defines the fiduciary duties of those who administer employee pension plans. Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." All this section imposes on trustees is an affirmative

duty to act with care, skill, prudence and diligence in the interest of fund participants and beneficiaries. *Id. See also International Bhd. of Teamsters v. New York State Teamsters Council Health & Hosp. Fund,* 903 F.2d 919 (2d Cir.), *cert. denied, New York State Teamsters Joint Council v. New York State Teamsters Council,* 498 U.S. 898, 111 S.Ct. 251, 112 L.Ed.2d 210 (1990). There is no statutorily imposed duty to consider the financial integrity of a plan before suspending retirement benefits upon a retiree's reemployment.

■ Whisman's third contention is that ERISA prohibits the suspension of retirement benefits if retirees become reemployed by the USPS, a government service (*Id.* at 15). Whisman argues that DOL regulations do not define "industry" to in-

bargaining power of the local unions by preventing retirees whose incomes are subsidized by the retirement benefits from offering their services to prospective and/or former employers at 'below scale' wage rates" (Doc. # 73 at 14). The Court notes that Whisman has made this bald assertion without supporting evidence. In light of the fact that Whisman has not offered any evidence to support his claim and that the record is devoid of any acceptable proof, the Court concludes that Whisman's arguments are merely speculative.

**11.** The sole issue on appeal in *Deak,* was whether the trustees' actions were arbitrary and capricious in amending the pension plan "so that the length of time retirement benefits are suspended when a retiree becomes re-employed depends on whether the re-employment is with a contributing or non-contributing employer." *Deak,* 821 F.2d at 574. The *Deak* court rejected the trustees' justification that the primary purpose of the plan amendment was to enhance the financial integrity of the plan, and concluded that the trustees were motivated by an objective aimed at strengthening the Union. *Id.* at 575–76, 581. The *Deak* court held that absent any unfunded liability and actuarial determinations requiring restrictions on reemployment, such action was arbitrary and capricious. *Id.*

The result in *Deak* indicates to this Court that the trustees' argument in that case was insufficient to demonstrate that the provision at issue was reasonably necessary to effectuate a particular goal. In contrast, the Trustees in the instant case have not attempted to justify their actions on the same basis articulated by the *Deak* trustees. In fact, nothing in the Central States decision even remotely suggests that the

Trustees acted with the sole purpose of protecting the fund's financial integrity when they suspended Whisman's benefits (Doc. # 74 at 34). The record herein indicates that the Trustees based their decision to suspend Whisman's benefits on the simple fact that his reemployment violated the pension plan's Reemployment and Suspension of Benefits Rules contained in Section 4.12(f)(3) (*Id.;* Doc. # 81 at 4).

Whisman also cites the Sixth Circuit decision in *Rhoton v. Central States, Southeast & Southwest Areas Pension Fund,* 717 F.2d 988 (6th Cir.1983). In the Court's view, *Rhoton* does not apply to the facts before the Court. Whisman cites several other decisions in support of his contention, none of which are binding on this Court or present persuasive reasoning. *See, e.g., Chambless,* 772 F.2d at 1038 (plan amendment was not justified pursuant to 29 U.S.C. § 1104(a)(1) on the basis that it was adopted to enhance the financial integrity of the retirement plan and is thus arbitrary and capricious); *Central Tool v. International Ass'n. of Machinists Nat'l. Pension Fund, Benefit Plan,* 523 F.Supp. 812 (D.D.C.1981), *aff'd. in part, rev'd in part,* 811 F.2d 651 (D.C.Cir.1987) (the effects of the forfeiture provisions were unduly drastic given the poor fit between the provisions and the goal they were designed to achieve); *Elser v. I.A.M. Nat'l. Pension Fund,* 684 F.2d 648 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983) (appellant submitted no evidence to support contention that forfeiture provisions were necessary or reasonable to protect fund's financial stability, and therefore failed to satisfy burden of showing some rational nexus between the fund's purpose and the forfeiture provisions); *Saunders v. Teamsters Local 639, Employees Pension Trust,* 667 F.2d 146 (D.C.Cir. 1981).

clude government service (*Id.* at 17). It appears to this Court that the essence of Whisman's claim challenges the Trustees' determination that USPS reemployment is prohibited reemployment under the retirement plan.[12] The Court finds no merit to Whisman's claim. The Court notes that there is no express statutory exclusion of government service from the suspension for reemployment rules imposed on pension plans. Aside from the nonexistence of an explicit provision in the DOL regulations that excludes government reemployment from its scope, Whisman has not identified any persuasive authority to support his contention.[13] In this Court's opinion, these regulations do not differentiate between government reemployment and non-government reemployment. The only distinction the Secretary has made in the suspension for reemployment regulations is with respect to employees in a maritime industry. Since the Secretary has consciously issued special provisions applicable to the maritime industry, the Court believes that if the DOL wished to create any distinction with respect to government services it would have done so. Thus, in the absence of clear precedent, the Court finds that an analysis of the term "industry" as part of the integrated whole counsels against the imposition of a rule excluding government service from the reemployment prohibitions at issue in this case.

Whisman's fourth contention is that the suspension of his retirement benefits violates ERISA § 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B) (Doc. # 73 at 17). Whisman appears to make several independent arguments under this contention. The thrust of Whisman's predominant argument is that, under ERISA, an employee's rights to his accrued benefit derived from his own contributions are nonforfeitable, and therefore, Central States cannot lawfully suspend benefits attributable to his self-contributions (*Id.* at 18–19). Since Whisman does not appear to know what portion of the benefit is attributable to his self-contribution (*Id.* at 25), he goes on to present what appears to be a method for determining the amount of benefits attributable to such contributions (*Id.* at 18–20). While it is true that it is contrary to ERISA's nonforfeitability requirements to forfeit an employee's "rights in his accrued benefit derived from his own contributions[,]" unfortunately, the existing record in this case

12. Contrary to Whisman's assertion, the court finds no plan provision that would except government employment from the reemployment rules and regulations at issue in this case. For example, the language contained in the Central States' plan, provisions 4.09(a)(1) and 4.12(f), does not exclude government services from the prohibition against reemployment. Among his contentions, Whisman also argues that the USPS is not an employer which competes with employers engaged in the Teamster industry (*Id.* at 12). The Court notes that section 4.09(a)(1) defines reemployment in the "Teamster Industry" as "all public and private work covered, or of the type covered, by any Collective Bargaining Agreement or any Teamster Contract" (Doc. # 81 at 110).

13. Whisman relies on *Riley*, 570 F.2d at 406 (declaration that pension trust owed retiree benefits unless regulations hereafter issued by DOL under § 203(a)(3)(B)(ii) should afford a basis for a contrary decision) to support his claim. The Court notes that *Riley* is of no precedential value and is unsuited to the facts before this Court. Furthermore, *Riley* is of very limited use since it was decided prior to the Secretary of Labor promulgating the necessary regulations defining "industry", before the DOL fully developed regulations defining prohibited employment and before ERISA became highly litigated. In fact, the *Riley* court stated,

> [w]e need not now decide how Riley would fare if the Secretary of Labor were to issue regulations that would construe 'in the same industry' to include government employment ... so far he has issued no regulations defining 'industry' under § 203(a)(3)(B)(ii).

*Id.* at 410. This Court also notes that one year later, *Riley* was returned to the Second Circuit Court of Appeals at which time that court noted that *Riley* was an "unusual case" and stated that it "did not decide on the first appeal that a member of a pension plan who had taken early retirement was entitled to the protection of § 203 of ERISA with respect to forfeitability" but simply assumed it since no one argued otherwise. 586 F.2d 968, 971–72 (2d Cir.1978)

Whisman has recently submitted to the Court a subsequent change in the reemployment provisions of the Central States retirement plan that now permits government reemployment (Doc. # 100, Ex. B). This Court holds that this new provision is irrelevant to the outcome in this case, because it was not in existence at the time the Trustees met and upheld the suspension of Whisman's benefits (Doc. # 81 at 334–35).

does not permit a determination of this claim. 29 U.S.C. § 1053(a)(1). The retirement plan submitted to this Court fails to clearly establish how benefits are calculated. Nothing in the plan provides an adequate explanation as to whether the $1,000 benefit payment to Whisman is an actuarial computation. Further, the plan language fails to define "self-contribution" or whether a self-payment is such a contribution. In addition to providing answers to these basic questions, were it not deciding this case in favor of the Plaintiff on other grounds, this Court would need and require, in considering this argument of the Plaintiff, a detailed explanation, with citations to the plan, explaining how benefits are calculated and whether benefits are recalculated after a suspension. If benefits are not recalculated, then Central States would have to explain why Whisman's suspension of his own contributions is not a forfeiture.[14]

Under the umbrella of his fourth contention, Whisman seems to renew an earlier argument by contending that "the forfeiture of [his] benefits was accomplished ... [when] the ... Trustees' made no determination that the USPS was" an industry within the meaning of the applicable regulations contained in 29 C.F.R. § 2530.203–3(c)(2) (*Id.* at 20). Whisman appears to further contend that the Trustees "ignored the question of whether or not the USPS met the [DOL] definition of an industry ... [and] ... applied its own rule without regard to the [DOL] regulations in determining that [Whisman was] reemployed in the Teamster industry" (*Id.* at 21–22). Whisman charges that the Trustees have produced no documentation to indicate that the USPS or its predecessor ever had its employees covered by the Central States' retirement plan (*Id.*). Whisman also continues to maintain that the USPS is not in any "business" since it is an arm of the government (*Id.* at 21). This Court has previously addressed and disposed of this argument and reiterates that it is simply not persuaded by Whisman's position.

Whisman's last argument under this umbrella is his contention that the Trustees contravened the DOL regulations by defining "prohibited reemployment" in the disjunctive rather than pursuant to the conjunctive mandate of the DOL regulations (*Id.* at 20–21, 22). Whisman's argument *is* well taken. ERISA stands for the proposition that an employee's pension cannot be forfeited except in certain circumstances. Under ERISA, the Secretary of Labor is directed to prescribe the exceptions to this general rule against forfeiture. According to the DOL regulations, a multiemployer retirement plan may suspend benefits if a retiree becomes reemployed in the same industry, in the same trade or craft and in the same geographic area. 29 C.F.R. § 2530.203–3(c)(2)(i–iii); *See also Dennis v. Board of Trustees of Food Employers Labor Ass'n.*, 620 F.Supp. 572 (M.D.Pa.1985) (suspension of benefits provision applied when pensioner obtained work in the same industry, the same trade or craft *and* geographic area covered by the Plan). The suspension of benefits provision is written in the conjunctive, and therefore, only applies when a pensioner obtains reemployment which meets *each* of the three conditions set forth in the rule.

The Central States retirement plan, as structured, did not conform to the provisions promulgated by the DOL because they are written in the disjunctive:

### Section 4.12 REEMPLOYMENT AND SUSPENSION OF BENEFITS RULES

(a) A Pensioner shall have his benefit payments suspended for any calendar month in which he works in "Prohibited Reemployment" (as defined in subsection (f), below), except that, if he has reached his Vested Pension Retirement Date he may work in Prohibited Reemployment without having his benefit payments suspended....

---

**14.** The Court notes that although Central States advances a statutory construction argument in support of its position, it has not set forth an explanation of what actually happened to Whisman's suspended $1,000 monthly benefit (Doc. # 82 at 16–17).

A Pensioner shall permanently lose his rights to any benefit payments which are suspended because of his work in Prohibited Reemployment.

\* \* \* \* \* \*

(f) *Prohibited Reemployment* means any of the following:

(1) Work (in any capacity whether as an employee or self-employed individual) in any of the following job classifications: driver (regardless of the kind of vehicle driven), driver helper, warehouseman, dock worker, mechanic, or office clerical; or

(2) Work in the Same Trade or Craft in which the Pensioner was involved during any time he earned Contributory Service Credit; or

(3) Work in any capacity for a Contributing Employer or for an employer which was, at any time, a Contributing Employer or for an employer engaged in the types of business activities in which a Contributing Employer is engaged; or

(4) Work (including self-employment) involving the supervision or management of any employee who performs a job described in (1), above (Doc. # 74 at 36–40)

\* \* \* \* \* \*

The effect of this scheme permits the suspension of benefits if the retiree's reemployment comes within *any single* suspension of benefits provision. Hence, the plan itself is more stringent than the statute or regulations. The record establishes that the Trustees relied upon Section 4.12(a) and (f) of the Central States pension plan to uphold the suspension of Whisman's benefits because his reemployment involved "working for an employer which is engaged in the same business activities as employers which make contributions to this Pension Fund on behalf of their employees" (Doc. # 81 at 10, 338). The record does not portray any other reason for Whisman's suspension. Accordingly, because the Central States plan did not conform to the requirements of the 29 C.F.R. § 2530.203–3(c)(2) standard, and because nothing in the record even remotely suggests that the Trustees' decision was rendered in compliance with the proper standard mandated by the DOL criteria, the Court holds that the suspension of Whisman's benefits was arbitrary and capricious [15] and violative of § 1132(a)(1)(B) of ERISA.

Whisman's fifth contention is that the Trustees have never enacted a policy pertaining to the suspension of retirement benefits upon reemployment with the USPS which has been consistently and uniformly applied to pensioners (*Id.* at 23). Whisman argues that this omission is tantamount to a violation of the fiduciary duty to consistently and uniformly apply various policies among the participants of the fund (*Id.*). Whisman's argument misconstrues the law. No explicit requirement under ERISA or the DOL regulations obligates Trustees to articulate policies specifically directed to reemployment with the USPS. As the Court previously noted in this opinion, ERISA and its regulations are written without carving out such a distinction. Importantly, Whisman has not pointed to any law or regulation in existence at the time of his suspension that would dictate a contrary conclusion. Therefore, this Court rejects the notion that retirement plans must specifically provide policies for every conceivable category of work.[16]

---

15. A decision resting on an erroneous legal foundation is not in accordance with law and, therefore, tantamount to arbitrary and capricious conduct.

16. In responding to Whisman's charge that the Trustees have never had a formulated policy regarding reemployment with the USPS, Central States submits the affidavit of Albert E. Nelson to support its rebuttal that since October, 1986, the Trustees have considered three suspension of benefit appeals involving retirees who were reemployed by the USPS (Doc. # 82 Ex. A). Whisman filed a Motion To Strike that affidavit (Doc. # 92) and Central States filed a Memorandum In Opposition To Motion To Strike Affidavit (Doc. # 95). Central States' response, as well as the affidavit in question, need not be addressed since the Court's consideration and resolution of Whisman's claim is confined to an analysis of the pertinent ERISA and DOL provisions. Accordingly, the Court overrules Whisman's Motion To Strike as moot.

■ Whisman's sixth and final contention is that the suspension of his retirement benefits constitutes bad faith on the part of the individual Trustees (*Id.* at 24). Whisman charges that the Trustees knew that the DOL regulations did not authorize the suspension of Whisman's benefits but suspended them anyway (*Id.* at 24).[17] The record in this case does not support Whisman's charges or reveal that the Trustees displayed any bad faith conduct in suspending his retirement benefits. The record indicates that Whisman's benefits were suspended because his reemployment involved "working for an employer which is engaged in the same business activities as employers which make contributions to this Pension Fund on behalf of their employees" (Doc. # 81 at 10, 338).[18] Whisman's December 26, 1986 letter to Central States stated that his reemployment involved "delivering mail to intercity Post Office Branches"[19] (Doc. # 81 at 17). The record further reveals that Attorney Joan P. Simmons, a member of the Central States' law department, rendered an opinion letter advising the Trustees that "UPS (a Contributing Employer) engages in some of the same types of business as the [USPS]" (Doc. # 81 at 4–5). That letter makes particular mention of overnight delivery of letters and delivery of parcels as examples of the overlap in activities between the two entities (*Id.* at 5). Attorney Simmons' letter was rendered before the Trustees deliberated over Whisman's appeal (Doc. # 81 at 1–5). In the Court's judgment, Trustee action in reliance on counsel's advice does not reflect bad faith conduct. Finally, it is evident from the administrative record that the Trustees analogized Whisman's postal employment to employment with United Parcel Service ("UPS"), a Contributing Employer.[20]

The Court believes that the trustees possessed adequate information to determine that delivering mail is the type of business activity performed by UPS, a contributing employer of Central States. This Court also believes that the Trustees were not unreasonable in concluding that the business activities of the USPS were similar in nature to those conducted by UPS. The Court notes that the district court in *Sclafani v. Central States, Southeast & Southwest Areas Pension Fund*, 795 F.Supp. 400 (S.D.Fla.1992) (Central States pension benefits suspended due to reemployment with USPS as mail handler) reached the same conclusion when faced with this same question. Applying the abuse of discretion standard to the Trustees' fact finding and decision making process, in and of itself, the Court finds that the Trustees followed the plan as they were required to do, and that their decision was based upon a deliberate, principled reasoning process and supported by substantial evidence. The record establishes that the Trustees acted within the bounds of the discretion given them and made a reasonable benefits determination. Therefore, the Court finds that the Trustees did not abuse their discretion in suspending Whisman's benefits. However, as previously noted, the plan itself was contrary to law and for that reason alone, the suspension of Whisman's benefits cannot be upheld.

■ It appears from Whisman's Complaint and briefs that he urges this Court to hold the Trustees personally liable for damages on the basis that they acted in bad faith and in breach of their fiduciary duties. Whisman has cited no pertinent

---

**17.** Whisman reasons that the Trustees knew their actions were unlawful "by virtue of their having petitioned the [DOL] for an amendment to the applicable regulations" (Doc. # 73 at 25).

**18.** According to plan, any work performed for an employer of this kind is considered prohibited reemployment under Section 4.12(f), Reemployment and Suspension of Benefits Rules (Doc. # 81 at 39–41).

**19.** This Court notes that on April 20, 1987, Attorney Kuczak represented in a letter to the Bene-

fits Claims Review Committee that Whisman's reemployment "requires him to do whatever job management [has] deemed appropriate from day-to-day, which includes any and all labor associated with the operation of the post office department" (Doc. # 81 at 12; 1–3).

**20.** Whisman does not contend, nor does he show, that the Trustees did not fully consider and compare the activities of the USPS with those of UPS.

case in support of his position.[21] In order to impose individual liability against the Trustees, the Court must find evidence in the record that the Trustees breached some responsibility, obligation or duty. 29 U.S.C. § 1109. ERISA requires Trustees to "discharge [their] duties ... in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Plan trustees are further required to discharge their duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The record herein demonstrates that the Trustees acted in accordance with the documents and instruments governing the retirement plan. The record reflects that the suspension of Whisman's benefits was based upon a good faith and well grounded interpretation of the pension plan by the Trustees and hence was not a breach of their fiduciary duties. *Johnson v. District 2 Marine Eng'rs. Ass'n.,* 857 F.2d 514 (9th Cir.1988) (trustee decision is not arbitrary or capricious if it is based upon a reasonable interpretation of the plan's terms and was made in good faith). The Court notes that the Trustees had a fiduciary duty to the plan's beneficiaries not to make wrongful payments out of the fund to those not entitled to payment. The record portrays Trustees who prudently interpreted the pension plan provisions at issue in this case in order to carry out this goal and to avoid depleting the monies available to the remaining plan participants. The logic of the foregoing exonerates the Trustees from individual liability for breach of a fiduciary duty.

 Whisman's complaint also demands reimbursement of prejudgment interest. "The general rule is that in the absence of a statutory provision the award of prejudgment interest is in the discretion of the court." *Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 990 (6th Cir. 1982). However, the Sixth Circuit has overturned this well-established rule in the unpublished decision of *International Union UAW Local 91 v. Park–Ohio Industries, Inc.,* 1989 WL 63871 [876 F.2d 894 (Table) ] (6th Cir.1989) (extracontractual compensatory damages are not available in actions for breach of fiduciary duties under § 1132(a)(1)(B)). *See also Scott v. Central States Southeast & Southwest Areas Pension Plan,* 727 F.Supp. 1095 (E.D.Mich. 1989); *contra, Cefali v. Buffalo Brass Co., Inc.,* 748 F.Supp. 1011 (W.D.N.Y.1990). This Court, therefore, holds that an award of prejudgment interest is unavailable to Whisman.

All that remains is to determine whether Whisman is entitled to attorney fees and costs. In *Armistead v. Vernitron Corp.,* 944 F.2d 1287 (6th Cir.1991), the Sixth Circuit explained that in an ERISA action by a plan participant, the trial court in its discretion may award reasonable attorney's fees and costs to either party.[22] *Id.* at 1301.[23] In exercising its discretion, a trial court should consider the factors identified in *Secretary of Dep't. of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985):

(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve

---

**21.** Once again Whisman appears to argue that the Trustees in the instant case breached their fiduciary duties because they used their positions to further the goals of the union and did not promote the financial integrity of the plan (Doc. # 94 at 10–11, 14–16). The Court, for the reasons already set forth herein, rejects Whisman's argument. Earlier, Whisman also argued that the suspension of his benefits constituted bad faith on the part of individual Trustees because they each knew that the DOL regulations did not authorize such suspension (Doc. # 73 at 24–25). Whisman reasons that the Trustees knew their actions were unlawful by virtue

of their having petitioned the DOL for an amendment to the applicable plan provisions (*Id.*).

**22.** 29 U.S.C. § 1132(g)(1) provides, in pertinent part:

In any action under this subchapter ... by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

**23.** ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 1301 (quoting *King*, 775 F.2d at 669).

There exist many arguments militating against the award of attorney's fees in this matter. The Court assumes that Central States could satisfy an award of attorney fees. However, as previously discussed herein, Whisman was unable to establish a showing of bad faith by the Trustees. Both parties advanced meritorious positions. Whisman has made no showing, either here or below, that he sought to recover a common benefit for the other participants in the Central States' plan or that this action presented significant legal questions regarding ERISA. Finally, this Court is offered no reason to consider the deterrent effect of such an award. Nonetheless, the Court is reluctant to deny reasonable attorney fees and costs in light of the relief granted. The Court is cognizant that Plaintiff's counsel has indeed succeeded on one and, ultimately, perhaps two of his many theories, to wit: the disjunctive design of Central States' reemployment suspension of benefits rules and reimbursement for nonforfeitable pension plan self-contributions. Plaintiff's counsel was successful in satisfying the Court that the Plan's suspension of benefits and rules were contrary to law and, in that sense, this litigation did present and resolve a significant legal question regarding ERISA.

Accordingly, the Court directs Plaintiff's counsel to file a petition in support of an award of attorney fees within twenty (20) days of this Decision and Entry. Defendants' counsel will then have twenty (20) days following receipt of Plaintiff's submission within which to advise this Court as to its position on the propriety of an award of attorney fees and costs. Defendants' counsel will also advise this Court as to his or her position on the amount of attorney fees and costs, should this Court be inclined to award same. Plaintiff's counsel will have ten (10) days following receipt of Defen-

dants' submission to file whatever reply memorandum is deemed necessary. The Court will address the merits regarding an award of attorney fees by a separate entry. It is well settled that a court may rule, post-judgment, on a request for an award of attorney fees. *White v. New Hampshire Dep't. of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

To conclude, the Trustees in this case applied a legally deficient standard to suspend Whisman's retirement benefits, to wit: it was arbitrary and capricious to suspend benefits on that basis. Therefore, this Court must set aside the decision of the Trustees. In so holding, this Court has determined that the Trustees did not breach any fiduciary duties either individually or collectively and therefore will not be held personally liable for damages. For the foregoing reasons, it is ORDERED that Plaintiff's benefits be reinstated, retroactive to September 1, 1987.[24] IT IS FURTHER ORDERED that Whisman's request for prejudgment interest be DENIED and that a ruling on his request for attorney fees and costs be deferred, pending completion of the above procedures.

Judgment is ordered entered in favor of Plaintiff and against the Defendants, ordering the Defendants to reinstate Plaintiff's benefits, effective and retroactive to September 1, 1987.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**24.** It has come to the attention of the Court that Central States has recently reinstated Whisman's benefits (August 7, 1992 letter from Attorney Kuczak).