14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Lonnie TOLLEY, Plaintiff-Appellant,
v.
COMMERCIAL LIFE INSURANCE COMPANY, Defendant-Appellee.
Allen SHELTON, Plaintiff-Appellant,
v.
COMMERCIAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 Nos. 92-6490, 92-6514.
 United States Court of Appeals, Sixth Circuit.
 Dec. 17, 1993.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; CELEBREZZE, Senior Judge.
 PER CURIAM.
 
 
 1
 In these consolidated actions under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1132(a)(1)(B), plaintiffs Allen Shelton and Lonnie Tolley challenge the district court's orders granting summary judgment in favor of defendant Commercial Life Insurance Company. We have jurisdiction under 28 U.S.C. Sec. 1291. For the following reasons, we VACATE the district court's order granting summary judgment and REMAND for de novo consideration of the plan and the plaintiffs' entitlement to benefits under the plan.
 
 I.
 
 2
 Plaintiffs Allen Shelton ("Shelton") and Lonnie Tolley ("Tolley") both work for Nuclear Fuel Services ("NFS"), a manufacturer of fuel for nuclear submarines. Both suffered on-the-job back injuries which disabled them from working for NFS. Plaintiffs now seek $250,000 lump sum disability benefits under the Voluntary Accident Insurance Plan for Hourly Employees ("the Policy") provided by NFS through defendant Commercial Life Insurance Company ("Commercial Life"). The Policy is a welfare benefit plan governed by ERISA. Commercial Life denied plaintiffs' claims on alternative bases. First, Commercial Life stated that plaintiffs were not "totally disabled" under the Policy, which defines that term as being "unable to engage in each and every occupation or employment for compensation or profit for which you are reasonably qualified by reason of your education, training or experience." Second, Commercial Life found that plaintiffs' injuries were not "loss[es] resulting directly and independently of all other causes from bodily injuries caused by accident" for two reasons. First, plaintiffs had preexisting back conditions and the Policy excluded coverage for loss caused by or resulting from ... bodily infirmity...." Second, the precipitating circumstances were not accidents.
 
 
 3
 Plaintiffs brought separate suits under ERISA, and the parties sought summary judgment. In both cases, the district court granted summary judgment to Commercial Life finding that plaintiffs' prior back injuries precluded coverage for their current injuries. Both plaintiffs appealed and their cases were consolidated on appeal. The specific facts of each case follow.
 
 A. Allen Shelton
 
 4
 Shelton was a chemical operator at NFS, where he worked in the manufacturing process. He has suffered back problems since 1977, when he had surgery for a ruptured disc. He returned to work without restrictions and worked until January 1987, when he suffered another back injury due to an automobile accident. Shelton returned to work in February 1987, after he was released with no restrictions. In September 1988, Shelton suffered another back injury while lifting a 60 to 70 pound tube at NFS. Since being treated for his most recent injury, Shelton has not worked.
 
 
 5
 On August 2, 1989, Shelton filed a claim for benefits under the Policy, which provides:
 
 PERMANENT TOTAL DISABILITY (Employee Only)
 
 6
 If injury occurring after the effective date of coverage and commencing within 365 days after an accident causes continuous total disability for 12 continuous months and you are judged to be permanently and totally disabled (unable to engage in each and every occupation or employment for compensation or profit for which you are reasonably qualified by reason of your education, training or experience), you will be paid the Principal Sum [$250,000] less any amount paid or payable under the policy as the result of the same accident.
 
 
 7
 The Policy excludes from coverage that loss which results from "illness or disease," and insures the employee against "loss resulting directly and independently of all other causes from bodily injuries caused by accident." On December 29, 1989, and February 9, 1990, Commercial Life denied the claim by letter for the reasons previously stated.
 
 B. Lonnie Tolley
 
 8
 Tolley was a production operator at NFS. Like Shelton, he had suffered previous back problems. In 1982, he injured his back lifting heavy drums. In 1984, he strained his back moving a loaded basket and within two weeks sought medical help for back pain. In 1986, Tolley's back problems were aggravated during an automobile accident. On February 28, 1989, he suffered the precipitating injury while he and another employee were moving a tank which weighed approximately four hundred pounds. He has not worked since shortly after the injury.
 
 
 9
 On June 25, 1990, Tolley filed a claim for benefits under the same policy provision as Shelton. On September 10, 1990, Commercial Life denied benefits for the reasons previously indicated.
 
 II.
 
 10
 Because Commercial Life has no discretionary power under the Policy, the district court reviewed its denial of benefits de novo pursuant to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The district court's review is limited to the record before the administrator at the time the determination was made. Perry v. Simplicity Eng'g, 900 F.2d 963 (6th Cir.1990).
 
 
 11
 Now before the court are issues pertaining to the construction of the policy. The question of whether the provisions are ambiguous is a question of law requiring de novo review. Boyer v. Douglas Components Corp., 986 F.2d 999, 1003 (6th Cir.1993). Plaintiffs contend that the provisions are ambiguous and that the court should employ the rule of contra proferentum thus construing the ambiguous policy terms against the insurer. If two different interpretations are applicable to a policy, the rule provides that the interpretation most favorable to the insured will be adopted. A. Windt, Insurance Claims and Disputes Sec. 6.02, at 281-82 (footnote omitted). Defendant correctly asserts that the rule is preempted.
 
 
 12
 Under McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 429-30 (6th Cir.1989), in deciding whether ERISA preempted a state breach of contract action, we held that Kentucky's rule of contra proferentum was preempted and not "saved." McMahan governs the issue here and we find that any state rule of construction likewise is preempted and not "saved." McMahan did not address the application of the rule as a matter of federal law pursuant to the Congressional directive to form a "federal common law of rights and obligations under ERISA...."
 
 
 13
 Under federal common law, the court resolves ambiguity through traditional methods of contract interpretation. Boyer, 986 F.2d at 1005. One such method is the rule of contra proferentum which is followed in all fifty states as well as the District of Columbia. Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 540 (9th Cir.), cert. denied, 498 U.S. 1013 (1990) (citations omitted). Therefore, the rule of contra proferentum may be applicable as a matter of federal common law. See Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98, 107 (2d Cir.1991) (adopting rule as federal common law); Kunin, 910 F.2d at 539-40 (holding that the rule applied either as "saved" state law or as federal common law). But see Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 153-54 (8th Cir.1990), cert. denied, 111 S.Ct. 2872 (1991) (quoting Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1329 (8th Cir.1989) (quoting Bruch, 489 U.S. at 112). Absent an ambiguous term in the Policy, there is no need to apply any rule of construction. See Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990). A term is ambiguous if it is subject to reasonable alternative interpretations. Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980).
 
 
 14
 After reviewing the Policy, we find no need to decide whether to apply the rule. Although the term "bodily infirmity" is not defined in the Policy, an infirmity as used in the context of accident insurance means a "defective condition of a substantial character which in some material degree impairs the physical condition and health of the applicant, and increases the chance of death, sickness, or accident against which the insurance company is asked to issue insurance." 29 Am.Jur.Reved.Ins. Sec. 749. Thus, a temporary ailment or disorder would not constitute a "bodily infirmity." Nor would a condition that caused marginal impairment. Although the application of this term to particular circumstances may be difficult, the term is not ambiguous.
 
 
 15
 A similar requirement as to degree has been read into the other provision implicated in the district court's decision--that losses must result "directly and independently of all other causes from bodily injury...." In Adkins v. Reliance Standard Life Ins. Co., 917 F.2d 794 (4th Cir.1990), the court used federal common law to construe a policy containing the same language as the policy here. It held that coverage for losses "resulting directly and independently of all other causes from bodily injury caused by accident" does not exclude preexisting infirmity or disease unless the infirmity "substantially contributed to disability or loss." Id. at 797 (citing Colonial Life & Accident Ins. Co. v. Weartz, 636 S.W.2d 891 (Ky.Ct.App.1982)). In reviewing other courts' construction of this provision, the Adkins court found that one group of cases permitted recovery even if there was a preexisting disease or infirmity on the ground that it was a remote cause. Id. at 796. Another group denied recovery if the preexisting condition contributed to the precipitating cause. Id.
 
 
 16
 Here, because the policy also excluded loss resulting from illness or disease, the first line of cases are inapplicable. Because a reasonable construction of the policy language would not ignore the exclusions, we find that the construction adopted in Adkins applies here. We agree the Adkins construction "promotes the interests of the employees and beneficiaries" thereby serving the purpose for which ERISA was enacted. Bruch, 489 U.S. at 113 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983)). Accordingly, it is not necessary to resort to the rule of contra proferentum.
 
 III.
 A.
 
 17
 As to plaintiff Shelton, the district court held that his preexisting back condition, degenerative disc disease, constituted a "bodily infirmity" which contributed to his disability and that "under the plain language of the policy, his injury of September, 1988, was not caused 'directly and independently of all other causes' by his lifting of the heavy object." In reaching its conclusion, the district court relied on the deposition testimony of Shelton's orthopedic surgeon wherein he stated that there was a "reasonable probability" that Shelton's "disc was in a weakened condition and vulnerable to this type of injury." Dr. Kennedy also testified that he would attribute one-third of the existing injury to Shelton's preexisting underlying condition. Further, Kennedy noted that the x-rays and CT scans of Shelton's back in January of 1987, were essentially the same as those made after the September 1988, lifting episode. Finally, he stated that although the plaintiff's return to a full range of activity after his earlier surgery created some inferences favorable to plaintiff's claim, the underlying weakness was not eliminated.
 
 
 18
 Although this testimony would support the district court's finding, the record is also clear that after Shelton's surgery for a ruptured disc, he returned to work without restrictions and worked until he was injured in an auto accident. Shelton again returned to work without restrictions and worked for over one and one-half years until the lifting incident occurred. After each previous injury Shelton received clearance from a company doctor to return to his job without restriction. Implicit in the district court's holding is the legal conclusion that the releases in no way insulated the first injury from the second or the second from the third. Once a doctor permitted Shelton to engage in the very work that resulted in his injury, we decline to find that either of the previous injuries constituted a "physical infirmity." The medical releases distinguish this case from Lingerfelt v. Nuclear Fuel Servs. Ins., 924 F.2d 1058 (Table), 1991 WL 1615, * 2, 1991 U.S.App. LEXIS 1822, at * 9-* 10 (6th Cir. Feb. 5, 1991) (unpublished) in that the doctor released the employee for work with a warning to be "careful with his back for the rest of his life because of his multiple level painful degenerative disc disease." Had the previous injury materially impaired the plaintiff's health, he would have been advised of that by the treating physician. Here, the record contains no warnings by treating physicians to put the plaintiffs on notice.
 
 
 19
 In addition, ERISA requires that participants be furnished with a plan description written in a "manner calculated to be understood by the average plan participant." 29 U.S.C. Sec. 1022(a)(1). This provision provides an alternate basis for vacating the district court's order. The average participant would not understand from reading the plan description that clearance from a doctor to return to work involving manual labor would be insufficient to cut the link between one occurrence of back strain and another injury. Consequently, a participant would reasonably expect coverage under the plan if he were disabled by an accident.
 
 B.
 
 20
 As to plaintiff Tolley, the record contains no information regarding medical releases. Tolley suffered "minor changes consistent with osteoarthritis." Whether this condition is related to the precipitating injury is not indicated and the degree to which any previous injury effected that last is not known. As Lingerfelt recognized, when a disease contributes only negligibly to the injury, coverage may be available. Tolley's previous back problem in 1986, was diagnosed as acute strain and sprain. Although the treating physician noted that Tolley experienced "remittent exacerbations of acute symptomatology" upon "minimal stress and strain," it is undisputed that Tolley returned to work and was injury free until the lifting incident.
 
 
 21
 We disagree with the district court that it is "apparent from the totality of the evidence in the record that his disability was caused, at least in part, by his pre-existing [sic] back condition which is certainly a 'bodily infirmity.' " The existence of osteoarthritis does not necessarily signify a condition which increased the likelihood of the injury. We are not free to apply a layman's prognosis of the condition when the term is used by a medical expert in the context of a professional opinion. Similarly, the mere occurrence of previous back injuries cannot be equated with the existence of a preexisting infirmity. We therefore conclude that the records presented to the administrator are inadequate to support a finding that either plaintiff suffered a preexisting bodily infirmity. Accordingly, consideration by the district court of the other arguments presented by the parties in this matter is necessary.
 
 IV.
 
 22
 Plaintiffs further argue that Commercial Life is estopped from denying disability benefits because it violated ERISA, 29 U.S.C. Sec. 1133 by not setting forth reasons for the denial of benefits.[1] We disagree.
 
 
 23
 Section 1133 does require written notice of a denial under a welfare benefit plan setting forth the specific reasons for denial.[2] Federal regulations provide that the notice under Sec. 1133 must contain the specific reason for denial, references to specific plan provisions on which the denial is based, a description of additional materials necessary to perfect a claim, and the steps necessary for a claimant to obtain review of the denial. 29 C.F.R. Sec. 2560.503-1(f). Here, the denial letters provided the reasons for denial and referred to specific policy provisions, but they failed to explain the steps by which plaintiffs could have sought review of their claims. Thus, the letters did not comply with the requirements of the regulations.
 
 
 24
 Not all procedural defects require us, however, to overturn a denial of benefits, but "significant error[s] on ... question[s] of law ... require[ ] that the decision to deny benefits be overturned." VanderKlok v. Provident Life and Accident Ins. Co., 956 F.2d 610, 616 (6th Cir.1992); Wolfe v. J.C. Penney Co., Inc., 710 F.2d 388, 393 (7th Cir.1983) (cited with approval in VanderKlok ). In VanderKlok, the insurance company failed to set forth the reasons for denial of a claim, and we remanded for reconsideration after the plaintiff has submitted new evidence pertaining to his claim. VanderKlok, 956 F.2d at 617. Here, however, plaintiffs were notified of the deficiencies in their claim, and nothing further was required to perfect the claim; thus, no new evidence is required. We conclude that although Commercial Life violated the strict letter of Sec. 1133 and its regulations, it did provide plaintiffs with the necessary information to understand why their claims were being denied, the true purpose of Sec. 1133. Thus, this error was not "significant" and does not require reversal.
 
 V.
 
 25
 For the foregoing reasons, we REMAND to the district court for consideration of the other basis upon which Commercial Life denied benefits.
 
 
 
 [1]
 Plaintiffs have failed to include their briefs in support of their motions for summary judgment in their joint appendices; therefore, we are unable to determine whether this issue was presented to the district court. The district court did not address this issue
 
 
 [2]
 Section 1133 provides:
 In accordance with the regulations of the secretary, every employee benefit plan shall--
 (1) Provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
 (2) Afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.