Telford P. WHISMAN, Plaintiff–
Appellee/Cross–Appellant,

v.

Loran ROBBINS, Trustee,
et al., Defendants,

Central States, Southeast & Southwest
Areas Pension Fund, Defendant–
Appellant/Cross–Appellee.

Nos. 93–3983, 93–4030.

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1995.

Decided June 1, 1995.

Konrad Kuczak (argued and briefed), Dayton, OH, for plaintiff-appellee cross-appellant.

Terence G. Craig, Thomas C. Nyhan, Francis J. Carey (argued), and Joan P. Simmons (briefed), Cent. States, Southeast & Southwest Areas Health & Welfare & Pension Funds, Rosemont, IL, for Central States, Southeast & Southwest Areas Pension Fund.

Before: BROWN, NORRIS, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Telford Whisman sued Central States, Southeast and Southwest Areas Pension Fund ("Central States" or "Plan") and several trustees, after the Plan suspended his early retirement benefits due to Whisman's reemployment. The district court held that the suspension was arbitrary and capricious because, although it conformed to the plan provisions themselves, the sections concerning suspension of benefits due to reemployment violated the Employee Retirement Income Security Act and concomitant Depart-

ment of Labor regulations.[1] Central States appeals those decisions; Whisman cross appeals the district court's denial of his request for prejudgment interest. Because we conclude that the district court erred in its interpretation of the pertinent ERISA and DOL regulations, we **REVERSE.**

## I. Facts

Central States is a multiemployer pension plan that provides pension benefits to union employees whose employers have agreed through a collective bargaining agreement to contribute to the fund. Whisman worked as a truck driver for Carolina Freight Carrier and Interstate System in the Teamster industry, and had pension contributions made to Central States on his behalf. In October 1984, at the age of 47, Whisman applied to Central States for a deferred pension benefit. On December 4, 1984, Central States informed Whisman that he qualified for a twenty-year deferred pension benefit, which he would begin receiving at age 57.

Whisman inquired about his eligibility to receive the "30-and-Out" pension benefit, which is available to participants with thirty years of service, regardless of age. Central States advised that Whisman had only 25 1/2 years of contributory service, but that if he contributed $3,359.17 to the Plan he would qualify for a "30-and-Out" benefit. Whisman did so and retired. He began receiving $1,000 per month under the "30-and-Out" retirement benefit in February 1986, at the age of 49.

In November 1986, Whisman informed Central States that he had taken a job with the United States Postal Service as a "flexible" employee. The Central States Reemployment Review Committee determined that Whisman's employment as a mail carrier violated the Plan's reemployment rules, and that Whisman would not be entitled to pension benefits until he quit. Whisman appealed this decision to the Benefits Claim Appeals Committee, contending that his work as a postal employee was not work in the "Teamster industry." The BCAC adopted

the recommendation of the RRC, finding that Whisman was "working for an employer which is engaged in the same business activities" as other contributing employers. Whisman then appealed to the Central States Board of Trustees, who likewise voted to suspend pension benefits.

Whisman brought suit under section 502 of ERISA, 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[2] He sought: (1) a declaration that the trustees had breached their fiduciary duties in suspending his benefits; (2) a ruling that the trustees be held liable personally for his damages; (3) reinstatement of benefits with interest; and (4) attorney's fees. The district court ordered the parties to submit memoranda in support of their positions. On December 29, 1992, the court issued a decision and entry finding that: (1) the trustees had not breached any fiduciary duty; (2) the Plan provisions concerning the suspension of benefits during periods of reemployment violated DOL regulation 29 C.F.R. § 2530.203-3(c)(2); and (3) the suspension of Whisman's benefits was arbitrary because it violated the DOL regulations. Central States filed a motion to alter or amend the judgment, arguing that the lower court had erroneously relied on 29 C.F.R. § 2530.203-3(c)(2) instead of § 2530.203-3(a), which the district court also denied. This appeal followed.

## II. Standard of Review

The lower court held that the Trustees' decision to suspend Whisman's benefits would be reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), directs that review be de novo unless the plan gives the administrator or fiduciary discretion "to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57. Our review of the question as to the standard to be applied in reviewing the Trustees' decision is de novo. *Tiemeyer*

---

1. The district court's opinion is published at 810 F.Supp. 936 (S.D.Ohio 1992).

2. Whisman named as defendants the Plan and the individual trustees of the Plan. Only the Plan is a party to this appeal.

v. *Community Mut. Ins. Co.*, 8 F.3d 1094, 1099 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994).

■ The Plan provides in pertinent part that the "Trustees have authority to control and manage jointly the operation and administration of the Pension Fund and of this Pension Plan in accordance with the terms of the Trust Agreement and of this Pension Plan and amendments thereof." The trust agreement in turn describes the powers and duties of the trustees as "hav[ing] the power to construe the provisions of this Agreement and the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers." We agree with the district court that the Plan, by incorporating the foregoing language of the trust agreement, expressly gives the Trustees discretionary authority to construe the terms and regulations applicable to the suspension of Whisman's benefits. *See Bruch*, 489 U.S. at 111, 109 S.Ct. at 954 ("[a] trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable"); *Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 568, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985) ("[t]he trustees' determination that the trust documents authorize their access to records here in dispute has significant weight, for the trust agreement explicitly provides that 'any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding upon the Union, Employees, and

Employers'"); *see also Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir.1991).

### III. The Appeal

### A. Legality of the Plan's Suspension of Benefits Provision

Both the Board of Trustees and the BCAC suspended Whisman's benefits under Section 4.12 of the Reemployment and Suspension of Benefits rules. Section 4.12 provides:

*REEMPLOYMENT AND SUSPENSION OF BENEFITS RULES*

(a) A Pensioner shall have his benefit payments suspended for any calendar month in which he works in "Prohibited Reemployment" (as defined in subsection (f), below), except that, if he has reached his Vested Pension Retirement Date[3] he may work in Prohibited Reemployment without having his benefit payments suspended if:

(1) he works less than 40 hours during a calendar month; or

(2) he is not working in the "Same Trade or Craft" ... in which he was employed while earning Contributory Service Credit under this Pension Plan; or

(3) he is not working in the same "Geographical Area covered by this Pension Plan"....

A Pensioner shall permanently lose his rights to any benefit payments which are suspended because of his work in Prohibited Reemployment.[4]

3. An employee's "VESTED PENSION RETIREMENT DATE (NORMAL RETIREMENT DATE)" is defined in Section 1.34 of the Plan as:

(a) Normal Retirement Date of a Participant means the later of:
(1) the 65th birthday of an Employee; or
(2) the 5th anniversary of the date on which an Employee first became an Active Participant.
(b) Normal Retirement Date is used to determine the date on which a Participant's Vested Pension becomes payable without reduction.

4. (f) *Prohibited Reemployment* means any of the following:
(1) Work (in any capacity whether as an employee or self-employed individual) in any of

the following job classifications: driver (regardless of the kind of vehicle driven), driver helper, warehouseman, dock worker, mechanic, or officer clerical; or
(2) Work in the Same Trade or Craft in which the Pensioner was involved during any time he earned Contributory Service Credit; or
(3) Work in any capacity for a Contributing Employer or for an employer which was, at any time, a Contributing Employer or for an employer engaged in the types of business activities in which a Contributing Employer is engaged; or
(4) Work (including self-employment) involving the supervision or management of any employee who performs a job described in (1), above.
....

Although the district court held that the Trustees, in denying Whisman's appeal, did not act unreasonably under the Plan's provisions, it nonetheless found error because "the plan itself was contrary to law and for that reason alone, the suspension of benefits cannot be upheld." *Whisman v. Robbins,* 810 F.Supp. 936, 949 (S.D. Ohio 1992). Central States challenges that holding.

Generally, ERISA prohibits a pension plan from failing to make payments to a participant who has reached the normal retirement age. 29 U.S.C. § 1053(a).[5] However, that same section creates a limited exception for eligible participants who have reached normal retirement age but continue to work:

> (3)(B) A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed, subsequent to the commencement of payment of such benefits—
>
> . . . .
>
> > (ii) in the case of a multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.
>
> The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph, including regulations with respect to the meaning of the term "employed".

29 U.S.C.A. § 1053(a) (West Supp.1995). The DOL regulations adopted in accordance with subparagraph (a)(3)(B)(ii) of § 1053 state in relevant part:

> (a) *General.* Section 203(a)(3)(B) of the Act provides that the right to the employer-derived portion of an accrued pension benefit shall not be treated as forfeitable solely because an employee pension benefit plan provides that the payment of benefits is suspended during certain periods of reemployment which occur subsequent to

the commencement of payment of such benefits. This section sets forth the circumstances and conditions under which such benefit payments may be suspended. A plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age, or for the suspension of that portion of pension benefits which exceeds the normal retirement benefit, or both, for any reemployment and without regard to the provisions of section 203(a)(3)(B) and this regulation to the extent (but only to the extent) that suspension of such benefits does not affect a retiree's entitlement to normal retirement benefits payable after attainment of normal retirement age, or the actuarial equivalent thereof.

. . . .

> (c)(2) *Multiemployer plans.* In the case of a multiemployer plan, . . . the employment of an employee subsequent to the time the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment results in section 203(a)(3)(B) service during a calendar month, or during a four or five week payroll period ending in a calendar month, if the employee, in such month or payroll period:
>
> > —Completes 40 or more hours of service . . . or —Receives payment for any such hours of service performed on each of 8 or more days (or separate work shifts) in such month, . . .; in
> >
> > —An industry in which employees covered by the plan were employed and accrued benefits under the plan as a result of such employment at the time that the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment, and
> >
> > —A trade or craft in which the employee was employed at any time under the plan, and

---

5. 29 U.S.C. § 1053(a) provides in relevant part:

(a) Nonforfeitability requirements
Each pension plan shall provide that an employee's right to his normal retirement benefit

is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
29 U.S.C.A. § 1053(a) (West Supp.1995).

—The geographic area covered by the plan at the time that the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment.

29 C.F.R. § 2530.203–3 (1994). Thus, under § 2530.203–3, a multiemployer plan may suspend otherwise accrued pension benefits: (1) when a participant retires prior to normal retirement age and then begins other employment, 29 C.F.R. § 2530.203–3(a); and when (2) a participant has reached normal retirement age and takes another job where he works forty or more hours in a month *and* his reemployment is in the same industry, in the same trade or craft, *and* in the same geographical region as that when he was covered by the plan. 29 C.F.R. § 2530.203–3(c)(2). In the first situation, a participant has not yet qualified for the protection of § 1053(a), which commences upon attainment of normal retirement age, usually age 65, a fact which is reflected in 29 C.F.R. § 2530.203–3(a). In the second, a participant is covered by § 1053(a), but that protection is subject to the limited exception carved out in the statute and regulations.

■ The district court acknowledged that "the plain language [of 29 C.F.R. § 2530.203–3(a)] permits the suspension of retirement benefit payments," *Whisman*, 810 F.Supp. at 944, but nonetheless felt that subsection (c) limited Central States' authority to suspend retirement benefits prior to normal retirement age. Further, because Section 4.12(a) of the Plan was phrased in the disjunctive rather than the conjunctive, the lower court held that the Plan provision violated ERISA § 1053(a)(3)(B)(ii) and DOL regulation § 2530.203–3(c).

This court recently had occasion to address precisely this analysis in *Gardner v. Central States, Southeast & Southwest Areas Pension Fund*, No. 93–3070, 1993 WL 533540 (6th Cir. Dec. 21, 1993) (per curiam) (unpublished),[6] which dealt with the identical reemployment provision at issue here and which considered the district court's decision below:

> Section 4.1[2][7] authorizes the suspension of benefits when a participant engages in prohibited reemployment. Even if a participant has not reached the vested retirement pension date, which is normally one's 65th birthday, the participant must still be working in prohibited reemployment before his benefits can be suspended. This is in contrast to Department of Labor ("DOL") regulations, which were passed pursuant to ERISA § 203(a), that state: "A plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age . . . for any reemployment and without regard to the provisions of Section 203(a)(3)(B)[.]" 29 C.F.R. § 2530.203–3(a) (emphasis added). *See also Geib v. New York State Teamsters Conference Pension*, 758 F.2d 973, 977 (3d Cir.1985) ("the non-forfeitability provisions of § 203 do not apply until normal retirement age is reached."); *Dennis v. Board of Trustees of Food Employers Labor*, 620 F.Supp. 572, 576 (M.D. Pa.1985) (finding that "the Board could have legally prohibited [the applicant], as a person who has not yet attained normal retirement age, from receiving pension benefits upon any reemployment."); *Chambless v. Masters, Mates & Pilots Pension*, 571 F.Supp. 1430, 1441 (S.D.N.Y.1983) ("The case law thus makes clear that section 203(a) provides no protection against the suspension of benefits of plan participants . . . who have not yet reached normal retirement age."). Thus, without running afoul of § 203(a), Central States need not have placed any conditions on the forfeiture of benefits for participants who become reemployed prior to reaching normal retirement age.

---

**6.** In *Gardner*, the plaintiff challenged the denial of pension benefits due to reemployment for periods prior to, and after his normal retirement age. Gardner had taken a twenty-year early retirement and then went back to work. His reemployment continued beyond his 65th birthday. Central States determined that his reemployment was prohibited reemployment under the plan, and that for the period after his 65th birthday, he failed to qualify for the safe-harbor plan provision, the equivalent of DOL regulations § 2530.203–3(c)(2).

**7.** Section 4.12 is identical to the section at issue in *Gardner*, "Section 4.14."

*Gardner,* 1993 WL 533540, at *5 (footnote omitted). We agree with, and therefore adopt, the reasoning and conclusion of the *Gardner* court with respect to Section 4.12.

*Gardner* held that early retirement benefits may be suspended for any reason under ERISA, and subsection (c) of 29 C.F.R. § 2530.203–3(c)(2) is inapplicable in that situation.[8] The district court erred in holding that the principle stated in subsection (a) regarding early retirement benefits was limited by subsection (c), and that the pension plan provisions were contrary to law. The Central States Plan, which limits suspension of early retirement benefits only if the participant is engaged in "prohibited" reemployment, was "more generous than it need have been," and is constrained only by the terms of its plan. *See Gardner,* 1993 WL 533540, at *5.

■ Whisman counters that *Gardner* is inapplicable because at the time Whisman applied and qualified for pension benefits, Section 4.12(a), adopted in 1987, was not in effect. According to Whisman, the application of the amended reemployment provision violates the principle of *Costantino v. TRW, Inc.,* 13 F.3d 969 (6th Cir.1994). We disagree. In *Costantino,* this Court held that a plan's attempt to eliminate early retirement subsidies for retirees that had already qualified for the subsidy prior to plan amendment violates the anticutback rules of ERISA and the Tax Code. *Costantino* is based upon an application and enforcement of section 204(g) of ERISA, 29 U.S.C. § 1054(g),[9] which prohibits employers from amending their pension plan to decrease or eliminate early retirement benefits or retirement-type subsidies. Even assuming that the "30–and–Out" benefit contains an early-retirement subsidy, Whisman's argument is unpersuasive, because § 1054(g) and *Costantino* involve a reduction or elimination of accrued benefits and retirement-type subsidies, not a suspension, as is the case here.

■ Had the prior reemployment provision been applied, Whisman would still lose. Section 4.09(a)(1) of the 1985 version of the Plan provided that "retirement pension payments shall be suspended for all periods of reemployment in the Teamster Industry," Section 4.09(a)(2), with "Teamster Industry" defined as "all public and private work covered, *or of the type covered,* by any Collective Bargaining Agreement or any Teamster Contract." Section 4.09(a)(1) (emphasis added). This definition of prohibited reemployment is substantially similar to the section relied upon by the trustees, Section 4.12(f)(3), which prohibits "[w]ork in any capacity ... for an employer engaged *in the types of business activities* in which a Contributing

---

8. Although not necessary to the resolution of this case because Whisman is not contesting the denial of benefits during post-normal retirement age, we note that *Gardner* also rejected the district court's conclusion that Section 4.12 failed to comply with 29 U.S.C. § 1053(a)(3)(B)(ii) and 29 C.F.R. § 2530.203–3(c). The *Gardner* court held that the *Whisman* court had overlooked Section 4.12(a)'s "safe-harbor" for persons who have reached normal retirement age. The *Gardner* court further held that although the language of Section 4.12(a) did not track the DOL regulations, it nonetheless complied:

> Section 4.1[2(a)] begins by stating a pensioner will have his benefits suspended while engaged in prohibited reemployment. Subsection (a) then carves out an exception to this rule for those pensioners who have reached normal retirement age and who meet one of the three specified conditions. Because the three conditions are written in the disjunctive, a pensioner need only meet one of them to qualify for the exception....
>
> To state this another way, [the participant] can engage in prohibited reemployment with-

out having his benefits suspended so long as he works less than 40 hours during a calendar month, he is not working in the same trade or craft, or he is not working in the same geographical area. Thus, [the participant] only needs to satisfy one of these three conditions to keep his pension and his job.

*Gardner,* 1993 WL 533540, at *9–10.

9. 29 U.S.C.A. § 1054(g)(1) & (2) (West Supp. 1995) provide:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of—
> (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
> (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

Employer is engaged." (Emphasis added.) Whisman, as a flexible employee, delivered mail to intercity post office branches, work which is similar to work performed by employees covered by collective bargaining agreements of contributing employers.[10] Further, we agree with the district court that "the Trustees were not unreasonable in concluding that the business activities of the USPS were similar in nature to those conducted by UPS." *See Whisman,* 810 F.Supp. at 949. *See also Sclafani v. Central States, Southeast & Southwest Areas Pension Fund,* 795 F.Supp. 400 (S.D. Fla. 1992) (reemployment with USPS as mail handler was prohibited reemployment under pension plan because of similarities between UPS, a contributing employer, and USPS), *aff'd,* 998 F.2d 1021 (11th Cir.1993). Thus, the result would have been the same.[11]

■ Whisman also cites a June 1985 interpretation of the reemployment provisions, apparently unearthed during discovery, wherein the trustees approved an interpretation of the reemployment rules to allow retirees to accept employment in a position outside potential coverage by a Teamster industry collective bargaining agreement. Whisman contends that, as the Teamsters could not lawfully organize United States Postal Service employees, the 1985 interpretation should have been applied to him. In support, he cites 39 U.S.C. § 1203(a), which

provides that "[t]he Postal Service shall accord exclusive recognition to a labor organization when the organization has been selected by a majority of the employees in an appropriate unit as their representative," 39 U.S.C.A. § 1203(a) (West 1980), and points out that the American Postal Workers Union, AFL–CIO, is that union. The problem with this argument is that the statute provides merely that the Postal Service may be represented by only one union at a given time, it does not say that union could *never* be the Teamsters. In the absence of any other evidence that postal service workers could not select the Teamsters as their exclusive bargaining representative, it cannot be said that USPS is "outside potential coverage" by a Teamster industry. This argument, too, fails.

■ Next Whisman argues that Central States could not lawfully suspend benefits for reemployment with USPS because USPS is not an "employer"[12] or "industry"[13] as defined in the Central States plan or by applicable federal law. The term "employer" as used in the prohibited reemployment provision is modified by the phrase *"engaged in the types of business activities* in which the Contributing Employer is engaged." Thus, we do not think the trustees acted arbitrarily in giving the term its plain meaning, as modified. The restricted definitions found in the

---

**10.** Whisman does not dispute this characterization of his work with USPS.

**11.** Central States began paying Whisman his "30–and–Out" benefit on March 1, 1990, after it amended the definition of "prohibited employment" to exempt government employment. Thus, the only amounts at issue involve the period between September 1, 1987, through February 1, 1990, or the principal sum of $30,000.

**12.** ERISA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5) (West Supp.1995).

The LMRA defines "employer" as including "any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation...." 29 U.S.C. § 152(2) (West Supp. 1995).

Although the Central States plan does not define "employer," it defines "Contributing Employer" as "any association or individual employer which has agreed or shall agree, in writing, to be bound by the Trust Agreement and to make Employer Contributions to the Pension Fund according to a Collective Bargaining Agreement...."

Whisman also refers a definition of "employer" found in what he claims is the 1987 versions of the Trust Agreement, as revised and amended through May 1987, which defines employer as "any employer who is bound by a collective bargaining agreement with the Union, or any employer not presently a party to such collective bargaining agreement who satisfies the requirements for participation as established by the Trustees and agrees to be bound by this Agreement."

**13.** "Industry" as defined in the regulations "means the business activities of the types engaged in by any employers maintaining the plan." 29 C.F.R. § 2530.203–3(c)(2)(i)(1994).

LMRA and ERISA, serve a different purpose, namely to define the scope of their application.

■ Whisman also claims that USPS is not an "industry" as defined in the regulations because USPS is not a "business" as are couriers such as UPS, a Contributing Employer. This argument misunderstands the use of the term in the regulation. "Business" as used in 29 C.F.R. § 2530.203–3(2)(c)(i) describes types of activities engaged in by the employers maintaining the Plan, not the outside industry. Further, the regulations themselves do not specifically exclude government businesses from the definition of industry; we see no reason to do so here. The Trustees did not abuse their authority in concluding that Whisman's reemployment involved "working for an employer which is engaged in the same business activities as employers which make contributions to this Pension Fund," since UPS "engages in some of the same types of business as the U.S. Postal Service (for example, overnight delivery of letters and delivery of parcels)."

### B. Forfeiture of Employee–Derived Contributions

■ Whisman also contends that Central States impermissibly forfeited employee-derived contributions, namely the $3,359.17 he contributed in order to qualify for the "30–and–Out" benefit. On this point, the district court stated that the existing record was insufficient to permit it to determine what portion of the accrued benefits were self-contributions. *Whisman*, 810 F.Supp. at 946–47. However, as earlier stated, under 29 C.F.R. § 2530.203–3(a) all benefits may be suspended prior to normal retirement age so long as the suspension does not affect a retiree's entitlement to normal benefits payable after attainment of normal retirement age, or the actuarial equivalent thereof.

In any event, the $3,359.17 figure is most accurately characterized as an "employer contribution," because the self payments were "made in an amount equal to the employer contribution required under the collective bargaining agreement." In other words, Whisman contributed that which his employer would have contributed had he remained in employment until his thirty-year requirement was fulfilled. Furthermore, the 1985 version of the Plan states that "Self–Contributions [14] may be made only for periods when the Employee is absent because of sickness, injury, layoff, approved strike or authorized leave of absence; and, only while the Employee is in an employee status and remains on the seniority list of a Contributing Employer." Thus, the amount contributed by Whisman was not an employee-derived contribution subject to special protections under ERISA.

### C. Fiduciary Duties

■ Whisman argues that Central States adopted benefit suspension rules contrary to the duty of the trustees to administer the Plan solely in the interest of the participants and beneficiaries, as required by 29 U.S.C. § 1104(a) and 29 U.S.C. § 186(c)(5). The trustees are not a party to this appeal, and Central States is not a fiduciary. *See* 29 U.S.C.A. § 1104(a)(1) (West Supp.1995) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). *See also Albedyll v. Wisconsin Porcelain Co. Revised Retirement Plan*, 947 F.2d 246, 252 (7th Cir.1991) (recognizing plan and trustees as separate entities with separate liabilities in determining adequacy of notices of appeal); *Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan*, 920 F.2d 651, 657 & n. 6 (10th Cir.1990). Further, breach of fiduciary duty claims inure to the benefit of the plan, not an individual participant. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). Because Whisman did not claim or argue a violation of 29 U.S.C. § 186(c)(5), we need not consider it here.

### IV. The Cross Appeal

Whisman argues in his cross appeal that the district court erred in denying his motion

---

14. "Self–Contributions" are defined as "voluntary contributions to the Pension Fund by an Employee for periods during which Employer Contributions are not required by a Collective Bargaining Agreement."

for prejudgment interest. Given the outcome reached here, this claim is moot.

## V. Conclusion

For the foregoing reasons, the judgment of the district court is **REVERSED,** and **REMANDED** with instructions to enter judgment in favor of Central States.