**Ann CHIERA, Plaintiff–Appellant–Cross–Appellee,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant–Appellee–Cross–Appellant.**

No. 99–3613, 99–3680.

United States Court of Appeals, Sixth Circuit.

Feb. 2, 2001.

Before JONES, SILER and CLAY, Circuit Judges.

CLAY, Circuit Judge.

This is a consolidated appeal. In Case No. 99–3613, Plaintiff, Ann Chiera, the designated beneficiary and wife of the now-deceased James Chiera ("Chiera"), appeals from the district court's order granting summary judgment to Defendant, John Hancock Mutual Insurance Co., pursuant to Federal Rule of Civil Procedure 56. Plaintiff filed a claim pursuant to the Employment Retirement Investment Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking benefits as the beneficiary under an ERISA governed insurance policy. For the reasons stated below, we REVERSE the district court's grant of summary to Defendant and REMAND with instructions to enter judgment in favor of Plaintiff.

In Case No. 99–3680, Defendant, cross-appeals the district court's judgment contending that (1) the district court improperly applied a *de novo* standard of review where it should have applied an arbitrary and capricious standard of review when assessing Defendant's denial of Plaintiff's claim for benefits; and, (2) the district court incorrectly determined that Chiera's loss of sight was covered under the accidental death and dismemberment ("AD&D") policy. For the reasons set forth below, we AFFIRM the district court's rulings as to these issues.

## BACKGROUND

Chiera was insured with Defendant for life insurance benefits and AD&D benefits under an insurance policy issued to Premier Industrial Corporation ("Premier"), Chiera's then employer. On April 23, 1990, Chiera underwent surgery at the Cleveland Clinic Foundation ("the Clinic") to repair his aortic valve which had been

defective since birth. On or about April 30, 1990, Chiera was discharged from the Clinic. On May 9, 1990, Chiera was admitted to Akron General where he went into cardiac arrest and suffered brain damage, which left Chiera in a permanent vegetative state. Chiera died approximately five years later on March 25, 1995.

Shortly after Chiera lapsed into this permanent vegetative state in 1990, Plaintiff was provided with a copy of the Summary Plan Description ("SPD") explaining the various benefits administered under the insurance policy. Defendant admits that Chiera was insured under the life insurance policy and the AD&D policy at all times.

Shortly after Chiera's death in 1995, Plaintiff made claims for the benefits under the life insurance policy and alleges that she submitted claims for dismemberment benefits under the AD&D policy as a result of Chiera's loss of eyesight suffered when he went into his vegetative state. On July 17, 1995, Premier sent Defendant a letter requesting payment of the life insurance proceeds. Additionally, Premier informed Defendant that Plaintiff would not receive any dismemberment benefits under the AD&D policy because Chiera's death did not occur within 365 days of the accident; the accident which resulted in Chiera's permanent vegetative state was caused by an operation he underwent to correct a defective aortic valve. Plaintiff claims that she did not receive a copy of the letter that Premier sent to Defendant until a year later.

On or about March 20, 1996, Jack Morrison, Plaintiff's attorney, sent Defendant a letter reiterating the claim for payment of the dismemberment benefits under the AD&D policy. Defendant denied the claim for accidental death benefits in a letter dated May 6, 1996. Because Defendant never addressed Plaintiff's claims under the dismemberment policy, and because the failure to address this specific claim was presumably a denial of the dismemberment claim, Plaintiff filed the instant action.

On March 26, 1998, Plaintiff filed a complaint in the instant case against Defendant in the Summit County Court of Common Pleas in Ohio. On May 1, 1998, Defendant filed a notice of removal removing the matter to the United States District Court for the Northern District of Ohio on the basis that the claims are governed by ERISA. On November 16, 1998, Defendant filed a motion for summary judgment. Plaintiff filed a brief in opposition to summary judgment and cross-motion for summary judgment on December 2, 1998. Apparently, it was not clear from Plaintiff's pleadings that she was seeking dismemberment benefits under the AD&D policy. Therefore, the district court mandated that the parties file supplemental briefs on the issue of Plaintiff's dismemberment claim on January 21, 1999. Thereafter, on April 8, 1999, the district court granted Defendant's motion for summary judgment and denied Plaintiff's cross-motion for summary judgment. Both parties appeal from the district court's order granting summary judgment to Defendant. Plaintiff appeals the district court's order granting summary judgment to Defendant on the basis that her claim for dismemberment benefits under the AD&D policy was not timely filed. Defendant cross-appeals from the district court's order claiming that the district court erred in applying a *de novo* standard of review in assessing whether Defendant's denial of Plaintiff's claims for benefits and finding that Chiera's loss of sight was covered under the AD&D policy.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *See Smith v.*

*Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). At the summary judgment stage, the judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## ANALYSIS

### I.

First we consider Defendant's cross-appeal as to whether the district court properly applied *de novo* standard rather than the arbitrary and capricious standard of review. We review the district court's determination *de novo. See Whisman v. Robbins,* 55 F.3d 1140, 1143 (6th Cir.1995).

 A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone,* the Supreme Court held that, under ERISA, absent the express delegation of discretion to a plan trustee, a court should conduct a *de novo* review of the trustee's benefit determination. *Id.* at 115, 109 S.Ct. 948. Conversely, when an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard. *Id.* at 110–12, 109 S.Ct. 948.

 After reviewing the SPD,[1] the district court concluded that Defendant's denial of Plaintiff's claim for benefits should

---

1. The language of the SPD provides in relevant part as follows:

> The Plan Administrator is: Corporate Insurance Department
> Premier Industrial Corporation
> 4500 Euclid Avenue
> Cleveland, Ohio 44103(216) 391–8300
> The Plan Administrator has authority to control and manage the operation and administration of the Plan and is the agent for service of legal process.
> This [SPD] outlines requirements for giving notice and proof of claim to the John Hancock Life Insurance Company. If a claim is denied, in whole or in part, the denial will be submitted to you in writing setting forth the following:
> 1. The basis for denial of the claim;
> 2. the Plan provision(s) upon which the denial is based;

> 3. a description of any additional information required of you or your dependants' and
> 4. an explanation of the procedure for reviewing the claim under the Plan.

(J.A. at 410–11.)

> The AD&D policy states in relevant part;
> Proof of Loss: John Hancock must be given written proof of the loss for which the claim is made. The proof must cover the occurrence, character and extent of that loss. It must be furnished within 90 days after the date of the loss, except that a claim will not be considered valid unless the proof is furnished within this time limit. However, it may not be reasonably possible to do so. In that case, the claim will still be considered valid if the proof is furnished as soon as reasonably possible.

(J.A. at 392.)

be reviewed *de novo* on the basis that Defendant was neither a plan administrator nor a fiduciary. Although we agree with the district court's decision to apply the *de novo* standard of review in this case, we disagree with the district court's basis for doing so. The *de novo* standard is the appropriate form of review in this matter because the SPD does not expressly grant discretionary authority to John Hancock so as to trigger the arbitrary and capricious standard of review.

### A. Scope of District Court's Standard of Review

#### 1. Defendant's Fiduciary Status

■ According to ERISA, a plan "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting the management of [an ERISA] plan or exercises any authority or control respecting the management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). This Court has found that "the definition of a fiduciary under ERISA is a functional one, [and] is intended to be broader than the common-law definition" such that the issue of whether one is considered a fiduciary does not turn upon formal designations. *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999). Therefore, for purposes of ERISA, a "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets. *See Michigan Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 549 (6th Cir.1998); *see also Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir.1998) (under ERISA a person is a fiduciary only with respect to those aspects of plan over which he or she exercises authority or control).

■ To that end, courts have distinguished employer actions that constitute "managing" or "administering" a plan from those actions that merely constitute "business decisions" which have an effect on an ERISA plan; the managing or administering the plan are deemed "fiduciary acts" while business decisions are not. *See Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir.1998). When an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a "fiduciary" for ERISA purposes. *See Libbey–Owens–Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir.1993).

■ Indeed, Premier was named as the plan administrator; however, Defendant is a fiduciary for purposes of ERISA inasmuch as it had a role in administering the plan because it had authority to accept or reject claims for losses under the group insurance policy as evidenced by the rejection letter that it sent to Plaintiff in response to her attorney's letter. Consequently, the district court incorrectly determined that Defendant was not a fiduciary for purposes of ERISA.

#### 2. Discretionary Authority

■ Defendant argues that the language of the AD&D policy, which provides that "written proof of loss" must be submitted to Defendant, is sufficient to vest it with discretionary authority, such that the arbitrary and capricious standard of review should have been applied. Defendant relies on this Court's decisions in *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376 (6th Cir.1996), and *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550 (6th Cir. 1998) (*en banc*). Defendant's reliance is misplaced inasmuch as the language used

in *Yeager* and *Perez* gave the insurance companies subjective judgment to determine whether a claim was "satisfactory." No such language governs the claims submitted to Defendant here.

In *Yeager*, this Court concluded that the language "satisfactory proof of [t]otal [d]isability to us" in a pension plan was sufficient to vest the plan administrator with discretionary authority. 88 F.3d at 381. In reaching its conclusion, the *Yeager* Court reasoned that

> [a] determination that evidence is satisfactory is a subjective judgment that requires a plan administrator to exercise his discretion. . . . It would not be rational to think that the proof would be required to be satisfactory to anyone other than [the plan administrator]. Even if the phrase "to us" is interpreted as defining to whom the proof should be submitted, there is no reason to believe that someone other than the party that received the proof would make a determination regarding its adequacy.

*Id.*

In *Perez*, this Court held that the language "shall have the right to require as part of the proof of claim satisfactory evidence" sufficiently vested the plan administrator with discretionary authority requiring the court to apply to the arbitrary and capricious standard of review. 150 F.3d at 555. The *Perez* Court reasoned that

> [a]lthough many of our prior cases finding a clear grant of discretion involved ERISA plans which explicitly provided that the evidence be satisfactory "to the insurer," "to the company" or "to us," it does not automatically follow that in the absence of such language discretion has not been granted to the plan administrator. . . . [T]his "right to require as part of proof of claim satisfactory evidence" means, semantically, that the evidence

must be satisfactory to Aetna, the only named party with the right to request such evidence. It naturally follows that Aetna, the receiver of the evidence, would review that evidence to determine if it constitutes proof of total disability. *Id.* at 556.

The language of the AD&D policy in the instant case is very different from the language this Court found sufficient to support a finding of discretionary authority in *Yeager* and *Perez*. Under the AD&D policy, "John Hancock must be given written proof of loss." Although Defendant must be provided with written proof of loss, the policy does not expressly bestow upon Defendant any authority to determine whether such proof of loss is sufficient. Unlike *Perez* and *Yeager*, there is no requirement under the AD&D policy that the proof of loss had to be "satisfactory" to Defendant. Moreover, *Firestone* and this Court's interpretation of *Firestone* mandate that the plan explicitly grant discretionary authority before an arbitrary and capricious standard of review can be applied. *See Yeager*, 88 F.3d at 380 ("This circuit has interpreted *Bruch* to require that the plan's grant of discretionary authority to the administrator be 'express.' "). That Defendant must be provided with "written proof of loss" does not explicitly grant it discretionary authority. Because Defendant was not expressly vested with discretionary authority under the AD&D policy, this Court concludes that the district court properly applied *de novo* review rather than the arbitrary and capricious standard.

### B. Coverage under Policy

■ Next, Defendant challenges the district court's determination that Chiera's loss of sight was covered under the policy. Defendant argues that Chiera's loss of sight was due to "disease, infirmity or

treatment of the same," which excluded his claim from coverage under the SPD.[2] Plaintiff contended, and the district court agreed, that her husband's loss of sight was covered under the policy because it resulted from his permanent vegetative state, the unforeseeable outcome of a surgical procedure. We believe that the district court correctly concluded that Chiera's loss of eyesight resulted from an "accident," as that term is commonly understood, and was therefore covered under the policy.

Because the Plan is governed by ERISA, we apply federal common law rules of contract interpretation, guided by both state law and general contract principles, to determine whether Chiera's loss of sight is covered under the policy. *See Perez*, 150 F.3d at 556 (citing *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir.1996)). The general principles of contract law dictate that this Court interpret the provisions of an ERISA governed insurance policy according to the plain meaning, in an ordinary and popular sense. *See id.*

Accident is defined as a "sudden event or change occurring without intent or volition through carelessness . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (1993). It is undisputed that Chiera's vegetative state and resulting sight loss was caused by a surgery he underwent to correct a defective aortic valve he had since birth. It is also undisputed that Chiera's vegetative state and resulting eye loss was caused by an unintentional, non-volitional act. Moreover, Chiera's death certificate clearly states that the cause of death was an "accident." In addition, the term "infirmity," as used within the "Exclusion" portion of the AD&D policy, is an ambiguous term. General contract principles require that we construe the language of an ambiguous contract against the drafter. *See Tolley v. Commercial Life Ins. Co.*, 14 F.3d 602, 603 (6th Cir.1993). Since Chiera's permanent vegetative state clearly fits within the definition of accident, we conclude that Chiera's loss of sight was the result of an accident rather than some infirmity or disease. *Cf. Parker v. Danaher Corp.*, 851 F.Supp. 1287, 1295 (W.D.Ark.1994) ("accident" as used in AD&D policy meant something which a *common person* would regard as unintended, not according to the usual course of things, or not as expected). Thus, the district court properly determined that Chiera's loss of sight was covered under the AD&D policy.[3]

## II.

Finally, we turn to Plaintiff's claim on appeal that the district court erred in determining that her claim for benefits

---

2. Exclusions: The [AD&D policy] does not cover loss that occurs more than 365 days after the accident, nor any loss resulting from war . . ., suicide, attempted suicide, bodily or mental infirmity, or disease, an infection other than a pyogenic infection of an accidental cut or wound, participation in or as a consequence of having participated in the committing of a felony, or any duties relating in any way to an aircraft or its operation, equipment, passengers or crew on a non-occupational basis.

(J.A. at 392.)

3. The district court also relied on the testimony of an expert, Dr. Charles Blatt, to determine that Chiera's loss of sight was the result of an accident. We find that this testimony was unnecessary. Moreover, because the doctor's testimony was not available to Defendant when it made its initial determination to deny Plaintiff's claim for benefits, the district court improperly considered this testimony. *See Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991) (recognizing that a reviewing court may only consider the evidence available to the administrator at the time the final decision was made).

under the AD&D policy was untimely. Having reviewed the record, we conclude that district court erred in determining that Plaintiff's claim was untimely. Under the AD&D policy, written proof of loss must be submitted to Defendant within ninety days of such loss or, where it is not be reasonably possible to do so, within a reasonable time. We conclude that a claim was submitted on behalf of Plaintiff within a reasonable time.

Chiera went into a permanent vegetative state on or about April 23, 1990, and remained in this state until his death on March 25, 1995. On May 10, 1995, Plaintiff signed a completed beneficiary claim form given to her by Premier, which Premier submitted to Defendant on July 17, 1995. The claim form was accompanied by Chiera's death certificate; a group policyholder's statement; and a letter wherein Premier told Defendant that, pursuant to its contract, the AD&D benefits should be denied.

Based upon the express language of the plan, we find that claim for life insurance and AD&D benefits was timely submitted on Plaintiff's behalf when Premier sent Defendant a letter on July 17, 1995, accompanied by Plaintiff's claim form and other relevant documents. Notably, the AD&D policy only requires that proof of loss be submitted to Defendant; it does not require that the proof of loss be submitted by the beneficiary herself, nor any other designated individual. As a result, when Premier forwarded Plaintiff's claim form and other materials to Defendant, along with Premier's letter specifically indicating that Chiera's cause of death was an accident, Premier in fact submitted Plaintiff's

AD&D claim to Defendant. Again, the fact that Plaintiff herself did not submit the claim to Defendant is of no moment where nothing in the AD&D policy suggests that the claim had to be presented to Defendant by Plaintiff. To hold otherwise would do nothing but put form over substance.[4]

Furthermore, the evidence in the record indicates that Defendant was previously made aware of Chiera's condition. First, there was correspondence from Premier to Defendant and Blue Cross Blue Shield of Ohio, dated in 1992, wherein Premier made Defendant aware of Chiera's vegetative state. This particular correspondence requested that Defendant intervene in a medical malpractice lawsuit filed on behalf of Chiera against the Clinic. Premier was attempting to recoup "any award made for covered medical expenses" paid to the hospital under Chiera's long-term disability benefits plan. (J.A. at 288.) Moreover, the March 20, 1996 letter from Plaintiff's counsel to Defendant indicates that a prior claim had been filed for the AD&D benefits.

Plaintiff argues that Defendant was given notice of the claim because Premier had notice of the claim and acted as an agent for Defendant. Although it is unclear whether Premier was acting as an agent for Plaintiff, Defendant or both, or just simply facilitating the filing of the claims of its employees in the ordinary course of business, we find it unnecessary to resolve this issue. It is clear that Premier submitted a claim on behalf of Plaintiff for both the life insurance benefits and the AD&D benefits. It is also clear that Defendant

---

4. We are not persuaded otherwise by any contention that because we do not know the extent of Defendant's review of the materials sent by Premier, we cannot conclude that Defendant was made aware of Plaintiff's AD&D claim through the receipt of these materials. This argument, aside from being without merit, invites us to rule in Defendant's favor based upon its lack of diligence. For obvious reasons, this is an invitation that we decline to accept.

was made aware of the nature of Chiera's death and injuries from both the death certificate and, we strongly suspect, prior communications between Defendant and Premier as indicated in the record. Thus we conclude that Defendant had timely notice of the claim and proof of the loss.

We further conclude that Plaintiff filed the claim within a reasonable time. Defendant conceded at oral argument that Plaintiff was under no obligation prior to Chiera's death to file a claim on his behalf for the loss. It is also clear that Chiera was in no position to file the claim himself. The AD&D policy provides that when it is not reasonably possible to file a claim within ninety days of the loss, the claim may be filed within such time as reasonably possible. Because Plaintiff submitted the completed forms to Premier within ninety days of Chiera's death, which Premier submitted to Defendant soon thereafter, we find that the claim was submitted within a reasonable time.

## CONCLUSION

For the above stated reasons, we hold that the district court did not err in applying a *de novo* standard of review and concluding that Chiera's loss of sight was covered under the AD&D policy, and therefore AFFIRM the district court in Case No. 99–3680. However, in Case No. 99–3613, we hold that the district court erred in granting summary judgment in favor of Defendant where a timely claim for AD&D benefits was filed on Plaintiff's behalf. Accordingly, we REVERSE the district court's grant of summary judgment in Case No. 99–3613 and REMAND with instructions to the district court to grant Plaintiff the dismemberment bene-

fits due under the AD&D policy, along with interest and attorney's fees.[5]

---

5. As there is no genuine dispute of any material fact and both parties filed motions for summary judgment, we conclude that Plaintiff is entitled to judgment as a matter of law and that summary judgment should have been entered in her favor. *See Trustees of Mich. Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 594–95 (6th Cir.2000).